Erlene **CROSSLIN** and Robert Crosslin, her husband, Plaintiffs-Appellees,

v.

The **MOUNTAIN STATES TELEPHONE AND TELEGRAGH COMPANY,** Defendant-Appellant.

No. 24536.

United States Court of Appeals, Ninth Circuit.

March 4, 1970.

Rehearing Denied March 30, 1970.

C. Webb Crockett (argued), of Fennemore, Craig, Von Ammon & Udall, Phoenix, Ariz., for defendant-appellant.

Sheldon Mitchell (argued), Phoenix, Ariz., Marian Halley (argued), Equal Employment Opportunity Commission, Washington, D. C., for plaintiffs-appellees.

Leonard M. Bell (argued), Asst. Atty. Gen., Gary K. Nelson, Atty. Gen., State of Arizona, Phoenix, Ariz., amicus curiae.

Before MERRILL, CARTER and HUFSTEDLER, Circuit Judges.

MERRILL, Circuit Judge:

From an order denying a motion to dismiss the complaint this appeal has, with our leave, been taken pursuant to 28 U.S.C. § 1292(b), and Rule 5, Federal Rules of Appellate Procedure.

The question presented arises under the Civil Rights Act of 1964. Appellees have brought suit upon a charge of an unlawful employment practice involving racial discrimination. The issue here is whether appellees' failure to afford the State of Arizona an opportunity to attempt settlement of the dispute and elimination of any unlawful practice deprived the District Court of jurisdiction

to grant the federal remedies provided by the Act.

The Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) provides:

"(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e–4 creates the Equal Employment Opportunity Commission (EEOC).

Enforcement provisions of the Act are set forth in 42 U.S.C. § 2000e–5. Subsection (a) provides for the filing, by the aggrieved person, of a charge of violation with the EEOC. It directs the EEOC to notify the employer and to investigate the charge. Subsection (a) further provides:

"If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."

Subsection (e) provides that suit may be brought by the aggrieved person if the EEOC has been unable to secure voluntary compliance. Subsection (f) grants jurisdiction to the federal courts to entertain such suits. Subsection (g) provides for remedies, including injunctive relief and affirmative orders of hiring with or without back pay.

At the heart of the issue on appeal is subsection (b), set forth in the margin.[1] In essence, it provides that where a state has prohibited the unlawful practice alleged and has provided an agency "to grant or seek relief" from such practice, then, "no charge may be filed under subsection (a)" with the EEOC before the expiration of 60 days from the giving of notice to the state agency of the facts constituting the alleged violation, or before the termination of state proceedings, whichever is earlier.

Appellees allege that appellant refused to hire appellee Erlene Crosslin "solely because she is a Negro." They further allege that the EEOC has found that reasonable cause exists to believe that the violation had occurred, and that the EEOC was unable to secure voluntary compliance. It is conceded, however, that although Arizona has, by law, prohibited the alleged practice, and has established a Civil Rights Commission to deal with such violations,[2] no notice had been given to that commission pursuant to subsection (b). Upon this ground appellant sought to dismiss the complaint.

The questions presented are whether the Arizona Commission is an agency authorized to "grant or seek relief from such practice" within the meaning of subsection (b) and, if so, whether fail-

[1]. "(b) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority."

[2]. Ariz.Rev.Stat. §§ 41–1401 to 41–1403; 41–1461 to 41–1466; 41–1481 to 41–1485.

ure to seek relief from that commission operates as a jurisdictional bar to this suit. The District Court held that the Arizona Commission does not fall within the purpose of subsection (b). The EEOC, as amicus curiae, has appeared in support of this result. The State of Arizona, as amicus curiae, has aligned itself with the appellant.

It is the position of appellees and the EEOC that the "relief" which a state commission must be authorized to grant or seek must constitute a suitable remedy for the aggrieved person. They point out that the only sanction or remedy specified by Arizona civil rights laws appears to be a criminal penalty—a fine of not to exceed $300. There is no specific authority for injunctive relief or back pay. No provision is made for class-wide relief. An EEOC decision dated December 5, 1965, General Counsel Opinion No. 667–65, CCH ¶ 17,252, at 7370, addressed directly to Arizona law provides:

"When a state fair employment practice law authorizes the issuance of a cease-and-desist order against a respondent but does not provide for enforcement thereof unless the respondent has been served with a cease-and-desist order involving a previous violation, the aggrieved person is not afforded a meaningful remedy unless there is an outstanding order against the respondent. Accordingly, the Commission will not defer to such state."

We find this position to be inconsistent with § 2000e–5(b).

The "relief" intended by that subsection, the scope of which is our specific concern here, is not that which may be granted by courts in response to a petition by the aggrieved person—the teeth of the federal program and the comparative weakness of Arizona's. Rather it is the relief that may be sought by the state or local authority itself. In this respect the Arizona Commission seeks relief in precisely the same fashion as does the EEOC and seeks precisely the same relief. Ariz.Rev.Stat. 41–1481, subsec. B provides:

"If, upon investigation, the commission determines that there is reasonable cause to believe that the charge is true, it shall endeavor to eliminate such alleged unlawful practice through means of conference, conciliation and persuasion." [3]

■ Since Congress has spoken in terms not of ultimate state remedy but of relief to be sought by a state authority, it may reasonably be supposed to have had in mind the type of relief which it had itself authorized the EEOC to seek: elimination of the unlawful practice by "conference, conciliation and persuasion." § 2000e–5(a). It may reasonably be credited with the desire to afford the states the same opportunity for settlement that it had afforded the EEOC by its requirement that a charge be filed with the EEOC prior to institution of suit. We so construe the Act.

Legislative history makes it clear that Congress did not regard an opportunity to seek such relief as unimportant and unworthy of delay. Speaking with reference to the Senate Bill, Senator Humphrey stated:

"The major substantive changes give increased emphasis to the role of State and local authorities and to methods of securing voluntary compliance. This is both salutary and consistent with the basic philosophy of the bill—that, whenever possible, the problems dealt with by the bill should be resolved locally and voluntarily." 110 Cong.Rec. 12707 (1964).

"If the practice complained of occurs in a State or locality which has a law prohibiting such practices and establishing an agency to deal with them and there is no such agreement the individual complainant cannot file his charge with the Commission until the State or local agency has been given

---

3. The Arizona Commission in addition is given the power to entertain hearings and issue cease-and-desist orders.

an opportunity to handle the problem under State or local law. However, after the agency has had 60 days to adjust the complaint or after it terminates proceedings on it, the complainant may go to the Federal Commission." 110 Cong.Rec. 12721 (1964).

Congressional purpose is further evidenced by the terms in which federal deference to the states is expressed.

Federal intervention does not depend on lack of suitable state relief.[4] Nor is there any requirement for exhaustion of state remedies.[5] On the contrary, the time limits for bringing a federal suit after the charge has reached the EEOC are clearly not designed to encourage an aggrieved person to await the outcome of state proceedings.[6]

Federal deference to the states is defined only in terms of time: sixty days. This is all, no matter how comprehensive the potential state remedies may be.

The only consequence of the existence of state proceedings worth pursuing beyond voluntary compliance would then appear to be that state and federal authorities after sixty days can simultaneously engage in the business of providing relief. We cannot conceive that Congress felt that such duplication of effort was so desirable that states were to be ignored unless they made it possible.

The phrase "grant or seek relief," if it is to be sensibly construed, must, then, be read with the sixty-day time period in mind and the relief that the state agency may seek under subsection (b) must reasonably be read to encompass those means most likely to produce results in the time allowed. Since the modest grace period for state action is hardly likely to accommodate coerced compliance, the opportunity afforded the states is realistically one to achieve voluntary compliance.

We sympathize with appellees' argument that their failure to give notice to the state was pursuant to advice of the EEOC—advice that we here hold to have been erroneous.

■ However, their reliance on Johnson v. Seaboard Air Line R.R., 405 F.2d 645 (4th Cir.1968), cert. denied *subnom.*, Pilot Freight Carriers, Inc. v. Walker, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969), and Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir.1968), is misplaced. Those cases hold only that an aggrieved person is not barred from private suit by the EEOC's failure to attempt conciliation. In so holding they point out that EEOC at least had the *opportunity* to make such an attempt. The result would appear to be that the EEOC (when dissatisfied with anything less than the full remedy available only through resort to the courts) can, without prejudice to the aggrieved person and despite the congressional preference for settlement, forego the opportunity afforded to it to seek voluntary compliance. It would seem clear, however, that it cannot arrogate to itself the power to deprive the states of that opportunity.

We conclude that the Arizona Civil Rights Commission is a state authority

---

4. We note also that under subsection (b), irrespective of any state commission power to grant or seek relief for the aggrieved person, the state is entitled to its sixty days grace if the state commission merely has authority to institute criminal proceedings respecting the violation.

5. Although this court, in EEOC v. Union Bank, 408 F.2d 867 (9th Cir. 1968) talked in terms of exhaustion, it is clear that what was meant was pursuit of state remedies to the extent required by subsection (b).

6. Where subsection (b) is involved the charge must be filed with the EEOC within 210 days after the occurrence of the alleged practice. 42 U.S.C. § 2000e–5(d). The EEOC has thirty days to obtain voluntary compliance (which it may extend to not more than sixty days if there is a good chance for voluntary compliance) and if unsuccessful it "shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge." *Id.* § 2000e–5(e).

authorized to seek relief under § 2000e–5(b) and that the State of Arizona accordingly was entitled to the sixty-day opportunity to settle the dispute afforded by that subsection. Since that opportunity was not afforded here, the EEOC was without authority to accept the charge filed by appellees. Without the charge the District Court was without jurisdiction to entertain suit. EEOC v. Union Bank, 408 F.2d 867, 869 (9th Cir.1968); *cf.* Stebbins v. Nationwide Mut. Ins. Co., 382 F.2d 267 (4th Cir. 1967), cert. denied, 390 U.S. 910, 88 S. Ct. 836, 19 L.Ed.2d 880 (1968).

Reversed and remanded, with instructions to dismiss the complaint.