Jane CORNE and Geneva DeVane and husband, Plaintiffs,

v.

BAUSCH AND LOMB, INC., a corporation, and Leon Price, Supervisory Employee of Bausch and Lomb, Inc., Defendants.

No. CIV 74-173-TUC-WCF.

United States District Court,
D. Arizona.

March 14, 1975.

Heather A. Sigworth, Tucson, Ariz., for plaintiffs.

Arthur W. Pederson, Shimmel, Hill, Bishop, Gruender, P. C., Phoenix, Ariz., for Bausch and Lomb, Inc.

Douglas L. Irish, Mary M. Schroeder, Lewis & Roca, Phoenix, Ariz., for Leon Price.

MEMORANDUM AND ORDER

FREY, District Judge.

Plaintiffs Jane Corne and Geneva DeVane filed the present complaint alleging a violation of civil rights based on sex discrimination. The suit was instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title 42, United States Code, Section 2000e et seq). It is alleged that at the time the discriminatory acts occurred, plaintiffs were employed by defendant Bausch and Lomb and defendant Leon Price was in a supervisory capacity over plaintiffs.

Plaintiffs filed charges of employment discrimination with the Equal Employment Opportunity Commission (E.E.O.C.) against defendants on October 12, 1973. The complaint alleges that since July, 1973, the E.E.O.C. has not recognized Arizona's right to deferral status under Section 706(c) of Title VII. On June 6, 1974, plaintiffs received a Notice of the Right to Sue from the E.E.O.C.

The complaint further alleges the following: plaintiffs worked in a clerical capacity for defendants in the period before the filing of the E.E.O.C. complaints; plaintiffs' employment conditions became increasingly onerous in that they were repeatedly subjected to verbal and physical sexual advances from defendant Price; defendant Price's illegal activities were directed not only to plaintiffs but also to other female employees and thus constituted a condition of employment that discriminates by sex in violation of Title VII; cooperation with defendant Price's illegal activities resulted in favored employment that discriminates by sex in violation of Title VII; immediately before the filing of the complaint with the E.E.O.C., defendant Price's activities directed to plaintiffs became so onerous that plaintiffs were forced to resign.

Defendant Bausch and Lomb has filed a Motion to Dismiss the complaint. The reasons set forth for dismissal are:

1. Plaintiffs have failed to exhaust their State remedies.

2. Plaintiffs have failed to timely file their charges with the Arizona Civil Rights Division.

3. The complaint fails to state a claim for relief for violation of Title VII of the 1964 Civil Rights Act.

Defendant Price has filed a Motion to Dismiss or in the alternative a Motion to Stay Proceedings. The State of Arizona has filed an Amicus brief urging dismissal of the complaint or in the alternative that the proceedings be stayed. The E.E.O.C. has filed an Amicus brief in opposition to defendants' Motion to Dismiss.

█ A hearing on the motions was held on January 20, 1975, and the matter is now deemed submitted. The main focus here is on the issue of whether a claim for relief is stated under Title VII.

Assuming that all allegations in the complaint are true, plaintiffs have failed to state a claim for relief under Title VII of the Civil Rights Act.

Title 42, United States Code, Section 2000e–2(a) provides in pertinent part:

"(a) [Employers.] It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

Plaintiffs allege that they are females; that they were repeatedly subjected to verbal and physical sexual advances from defendant Price; and that due to such advances plaintiffs terminated their employment with Bausch and Lomb. Plaintiffs allege that putting a male in a supervisory position over female employees, where the male supervisor persistently takes unsolicited and unwelcome sexual liberties with the female employees is the creation of a sex discriminatory condition, and a limitation that tends to deprive the women of equal employment opportunities; the plaintiffs seek to hold the employer liable because its administrative personnel knew

or should have known of defendant Price's conduct toward female employees.

There is little legislative history surrounding the addition of the word "sex" to the employment discrimination provisions of Title VII of the Civil Rights Act of 1964. In Diaz v. Pan Am. Airways, Inc., 442 F.2d 385 (5th Cir. 1971), the Court stated:

". . . The amendment adding the word 'sex' to 'race, color, religion and national origin' was adopted one day before House passage of the Civil Rights Act. It was added on the floor and engendered little relevant debate. In attempting to read Congress' intent in these circumstances, however, it is reasonable to assume, from a reading of the statute itself, that one of Congress' main goals was to provide equal access to the job market for both men and women . . ."

With respect to unlawful employment practices by employers, it can be seen that in addition to the specific language in Title 42, United States Code, Section 2000e–2(a) making it unlawful for an employer to discriminate because of an individual's sex with respect to hiring, discharging, classification or compensation of individuals, it has been held an unlawful employment practice for an employer to discriminate against individuals with respect to job assignment or transfer, Rosenfeld v. Southern Pacific Co., 444 F.2d 1219 (9th Cir. 1971); hours of employment, Ridinger v. General Motors, Corp., 325 F.Supp. 1089 (D. Ohio 1971); or "fringe benefits" such as retirement, pension, and death benefits, Bartmess v. Drewrys U.S.A., Inc., 444 F.2d 1186 (7th Cir. 1971). Employers have been found to have discriminated against female employees because of their sex where they maintained policies which discriminated against females because they were married, Jurinko v. Edwin L. Wiegan Co., 331 F.Supp. 1184 (D.Pa.1971) or pregnant, Schattman v. Texas Employment Co., 330 F.Supp. 328 (D.Tex.1971). In addition, it has been held that an employer's rule which forbids or restricts the employment of married women and which is not applicable to married men is a discrimination based on sex prohibited by Title VII. Sprogis v. United Airlines, Inc., 444 F. 2d 1194 (7th Cir. 1971).

In all of the above-mentioned cases the discriminatory conduct complained of, arose out of company policies. There was apparently some advantage to, or gain by, the employer from such discriminatory practices. Always such discriminatory practices were employer designed and oriented. In the present case, Mr. Price's conduct appears to be nothing more than a personal proclivity, peculiarity or mannerism. By his alleged sexual advances, Mr. Price was satisfying a personal urge. Certainly no employer policy is here involved; rather than the company being benefited in any way by the conduct of Price, it is obvious it can only be damaged by the very nature of the acts complained of.

Nothing in the complaint alleges nor can it be construed that the conduct complained of was company directed policy which deprived women of employment opportunities. A reasonably intelligent reading of the statute demonstrates it can only mean that an unlawful employment practice must be discrimination on the part of the employer, Bausch and Lomb. Further, there is nothing in the Act which could reasonably be construed to have it apply to "verbal and physical sexual advances" by another employee, even though he be in a supervisory capacity where such complained of acts or conduct had no relationship to the nature of the employment.

It would be ludicrous to hold that the sort of activity involved here was contemplated by the Act because to do so would mean that if the conduct complained of was directed equally to males there would be no basis for suit. Also, an outgrowth of holding such activity to be actionable under Title VII would be a potential federal lawsuit every time any employee made amorous or sexually oriented advances toward another. The

only sure way an employer could avoid such charges would be to have employees who were asexual.

■■ One further matter not raised by the parties, and which appears bothersome to the Court is the absence of any showing by plaintiffs, or E.E.O.C. in their Amicus brief, that all of the requirements of Title 42, United States Code, Section 2000e–5 have been met.

The parties have clearly and strenuously argued the issue of referral or non-referral to the state agency and this will be discussed later. However, nowhere does it appear that the provisions of Section 2000e–5(b) have been complied with. That Section requires that "the Commission *shall* serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer . . . within ten days, and *shall* make an investigation thereof." (Emphasis added)

That Section further requires "If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission *shall* endeavor to eliminate any such alleged unlawful employment practice by informal methods . . ." (Emphasis added)

Subsection (c) is mandatory in providing that where there is a State law "prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice" no charge may be filed by or with the Commission "before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated".

Here no State proceedings were instituted, no attempt was ever made to grant the State of Arizona jurisdiction to act. Clearly this is a violation or disregard of the intent and direction of the statute.

Counsel for plaintiffs and E.E.O.C. argue that the State agency was notified of the charge and that therefore the requirement of the statute was met. They cite Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679, as authority for such notification procedure. *Love* is inapposite because in *Love* the State after being orally notified of the claim under Title VII, and having been given an opportunity to act, specifically and in writing, waived the opportunity to take further action on the grievance. Here the record is clear that E.E.O.C. was no-. tifying Arizona only on a courtesy or "provisional" basis. There was no jurisdiction intended to be given to Arizona in the matter because E.E.O.C. "assumed jurisdiction", as shown by its own files, on October 25, 1973, before ever notifying Arizona of what E.E.O.C. classifies as a "non deferral" case. E. E.O.C. cannot now contend that this was the deferral type notice required by the Act because E.E.O.C. never intended to defer the case. This course of conduct by E.E.O.C. was contrary to and in spite of the Ninth Circuit determination in Crosslin v. Mountain States Tel. & Tel., 422 F.2d 1028 (9th Cir. 1970), vacated 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971) and Motorola, Inc., v. Equal Employment Opportunity Commission, 460 F.2d 1245 (9th Cir. 1972), that under 42 U.S.C., Section 2000e–5(c) an action should not be commenced without first filing notice of such charge before a State agency which is authorized to grant or seek relief from an unfair employment practice and that Arizona Civil Rights Commission is such an agency.

What E.E.O.C. has done in this case is to deny that it is obligated to serve any notice on the Arizona agency, but that it sent a "provisional" notice although not recognizing any jurisdiction by the Arizona agency. Yet E.E.O.C. apparently took no action on this case as required by Section 2000e–5(b). E.E.O.C. received the complaint on October 12, 1973, assumed jurisdiction of the matter on October 25, 1974, sent Arizona a "provisional" notice on October 26, 1973, and then apparently the matter was dormant until June 6, 1974, when notice was is-

sued to plaintiffs of their right to sue. Thereafter, plaintiffs filed suit in this Court on August 30, 1974. Clearly this procedure is in contravention of both the letter and intent of the Act. It appears that E.E.O.C. failed to do its duty and then pushed its responsibility on to the Court and deliberately by-passed the State agency in the process. Because E.E.O.C. assumed jurisdiction over this case and did not recognize Arizona as a referral agency, it was obligated to follow the statutory procedure mandated by Section 2000e-5(b).

Plaintiffs' complaint alleges they resigned from their employment with defendant Bausch and Lomb "immediately before the filing of their complaint with E.E.O.C." If so, then there was a duty and obligation on E.E.O.C. to file or give notice to the Arizona agency within sixty days (A.R.S. Section 41–1481). It would now be useless procedure for this Court to defer the matter to the Arizona agency under the *Motorola* case (*supra*), because the State time limitation has expired. Said Section of the Arizona Revised Statutes (41–1481) requires the filing of a complaint of alleged discriminatory practice or act with the Civil Rights Division of the Department of Law within sixty days from the date of the alleged practice or act. The Arizona Act and procedures appear to be patterned after the Federal Act and fully consistent therewith.

What E.E.O.C. and the Courts are doing by ignoring the clear mandate of Congress as to prerequisites set forth in the Act before a suit can be filed, is to load up the trial Courts with cases of this nature which may very well have been disposed of at the state or federal administrative level. It is to the advantage of all concerned that civil rights complaints of this nature, involving employment, be simply and expeditiously handled at the administrative level. Congress was clear in stating its intent and in setting forth the procedures. They should be followed. For the Courts to hold that these prerequisites are not jurisdictional is to defeat the clear intent and mandate of Congress and create just another federal lawsuit with attendant cost and delay to the parties.

It is ordered that defendants' Motions to Dismiss, are granted and the complaint, is dismissed.

It is further ordered that the Clerk of this Court forthwith mail a copy of this Memorandum and Order to all counsel of record.