**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY.**

Civ. No. HM76–560.

United States District Court, D. Maryland.

Sept. 16, 1976.

David W. Zugschwerdt, Asst. Gen. Counsel, Katherine S. McGovern, Atty., Washington, D.C., and Valerie Olson, Atty., Baltimore, Md., for petitioner E.E.O.C.

Stephen D. Shawe, Arthur M. Brewer, Patricia S. Kuzma and Leslie R. Stellman, Baltimore, Md., for respondent U.S. Fidelity & Guaranty Co.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

The matter before the court is the petition of the Equal Employment Opportunity Commission (EEOC) to enforce a subpoena duces tecum issued on March 11, 1975, to respondent, United States Fidelity and Guaranty Company (USF&G). The petition was filed on April 14, 1976, and a hearing was held on May 7, 1976. The parties filed further memoranda after the hearing.

The subpoena sought to be enforced results from a charge filed by Joyce Braden. By letter dated April 17, 1974, Ms. Braden charged USF&G with refusing to hire her for a position at its Orlando, Florida office as an "outside adjuster" because of her sex. In order to have the letter in proper form for processing, the Commission contacted Ms. Braden and requested that she "perfect" her charge by completing an EEOC Charge Form and signing it under oath. On July 26, 1974, the Commission adopted internal guidelines which provided for the administrative processing of 707 charges and related 706 charges by the Office of the General Counsel. Consistent with those guidelines, the Braden charge was transferred to the Baltimore District Office for administrative processing with the 707 Commissioner's charge, *Powell v. USF&G*, TBA5–0336.

Ms. Braden perfected her charge nine months after her letter on January 10, 1975. Notice of the charge was served on the Company on February 6, 1975. On that same day, a notice letter advising of the Braden charge was sent to the Florida Commission on Human Relations. The Commission did not defer to the Florida Commission because it considered the Florida Commission not to be a 706 deferral agency. Thereafter, the Commission began its investigation and sought the production of the records that are the subject of this application for subpoena enforcement.

The Company contests the enforcement of the subpoena on the following grounds:

1. The EEOC's Commissioner's charge is invalid.

2. The underlying charge is not a valid basis for an administrative subpoena because Ms. Braden failed to file a proper and timely charge of employment discrimination.

3. The Company was not informed or given notice of the charge within the ten-day limit prescribed by statute.

4. The charge was not properly deferred.

5. There was inordinate delay by the EEOC in the time it took to process the respondent's petition to revoke the subpoena, in commencing judicial proceedings subsequent to its determination denying the respondent's petition, and in commencing its investigation of the putative charge.

6. The subpoena is invalid because it demands that various personnel records be presented to a person not authorized to receive them, namely a staff attorney for the Commission's General Counsel. Charges of unlawful discrimination when filed in a Commission District Office are to be investigated by that office, and thus the Miami District Office is the only Commission entity authorized to investigate this matter. The Commission's attempt to process this charge through the General Counsel's office as part of a Commissioner's charge is improper and prejudicial to respondent.

7. Title VII does not contemplate the involvement of the General Counsel's office in the investigative stage of a local proceeding filed by a single individual in accordance with Section 706 in a local District Office of the Commission.

8. The subpoena requests information which goes far beyond the reasonable scope of the underlying charge in that it requests, *inter alia*, information pertaining to racial discrimination, while the underlying charge alleges exclusively sex discrimination.

Several of respondent's contentions have been argued and determined in earlier cases before this court. These contentions, therefore, need not be reviewed in detail herein. The first contention, that the Commissioner's charge is invalid, was rejected by the court in *EEOC v. USF&G*, HM75–366, 10 EPD ¶ 10,549 (D.Md.1975), affirmed on June 29, 1976, by the United States Court of Appeals for the Fourth Circuit. *See EEOC v. USF&G*, 538 F.2d 324 (4th Cir. 1976).

The sixth and seventh contentions, concerning the involvement of the General Counsel in the investigation of the charge, were rejected by this court in *EEOC v.*

*USF&G*, 414 F.Supp. 227 (1976), currently on appeal.

In its decision of May 4, 1976, the court also considered respondent's argument that the Commission acted unreasonably in its undue delay in commencing investigation (contention five). The delay in that case, involving the Stulman subpoena (HM75–1712), was approximately two years. The court held that there had been no unreasonable delay, declining to follow the holding of *EEOC v. Exchange Security Bank*, 11 FEP Cases 764 (N.D.Ala.1974). The court subsequently learned that the *Exchange Bank* case was reversed on appeal by the Fifth Circuit. (*See* 91 *Lab.Rel.Rep.*, Analysis 61 (BNA, April 19, 1976)).

■ In the instant case, a delay of approximately two years from the Commission's receipt of the letter of April 17, 1974, to the Commission's investigation of the charge is also involved. The court stands on its previous decision and holds that this delay is not sufficient to prevent subpoena enforcement in the absence of any showing of prejudice by the respondent. The same reasoning applies to the Commission delay in processing the respondent's petition to revoke the subpoena and in commencing judicial proceedings subsequent to its determination denying the respondent's petition. Therefore, none of the alleged delays suffice to cut off further Commission investigation.

■ The court also determined in its opinion of May 4, 1976 the question raised by contention eight concerning the scope of the subpoena. If the court should decide that the subpoena should be enforced, then the Commission is entitled only to those records identified by sex and not by race. The underlying charge alleges exclusively sex discrimination, and Ms. Braden is Caucasian. Therefore, information identified by race is not relevant to the instant investigation and cannot be obtained.

The remaining contentions which will be discussed below are numbers two, three and four. The court will turn now to a consideration of the issues involved therein.

## I. *Timeliness of Charge*

As stated above, Ms. Braden notified the Commission of her complaint by letter on April 17, 1974. After being contacted by the Commission, Ms. Braden filed a formal, sworn charge on January 10, 1975. The sworn charge was filed over 250 days after the incidents alleged in the charge had occurred, although the letter was filed only a few days after the incident. Respondent contends that the charge was not timely filed as required by 42 U.S.C. § 2000e–5(e) which reads:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . . .

The unsworn letter cannot serve as a charge, respondent contends, because of the requirement of 42 U.S.C. § 2000e–5(b):

Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.

The Commission's regulation found at 29 CFR § 1601.11 has bearing on respondent's contention. It reads:

[A] charge is deemed filed when the Commission receives from the person making a charge a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, *including failure to swear to the charge*, or to clarify and amplify allegations made therein, and such amendments alleging additional acts which constitute unlawful employment practices directly related to or growing out of the subject matter of the original charge will relate back to the original filing date. (emphasis supplied)

According to the Commission regulation, the instant charge was filed on April 17, 1974, because Ms. Braden's letter of that date clearly identified the parties and described the practices complained of. Her later sworn charge would be considered an amendment which related back to the origi-nal filing date. Consequently, the charge would be timely filed.

Respondent contends that the court should not apply the above regulation, although it was upheld in the Fifth Circuit decisions of *Weeks v. Southern Bell Telephone Co.,* 408 F.2d 228 (1969) and *Georgia Power Co. v. EEOC,* 412 F.2d 462 (1969). Those Fifth Circuit cases were decided before the passage of the 1972 amendments to the Civil Rights Act. Before the amendments, the applicable statutory language read:

Whenever it is charged in writing under oath by a person claiming to be aggrieved, . . . that an employer . . . has engaged in an unlawful employment practice, the Commission shall furnish such employer . . . with a copy of such charge and shall make an investigation of such charge. . . .

■ Respondent characterizes the pre–1972 provision as "precatory" and the instant provision as "mandatory." The court, however, does not agree with respondent's contention that the failure to file a sworn charge within 180 days of the alleged discrimination should bar Commission action when a timely letter which clearly identifies the parties and the practices complained of has been filed. In the court's opinion, respondent ascribes too much significance to the language change in the 1972 amendments. There is no evidence in the legislative history that Congress intended to change the results reached by courts interpreting the pre–1972 language.

■ The reasoning of the court in *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355 (6th Cir. 1969), is still sound and applies to the instant situation:

Although a literal reading of section 706(a) would seem to require that a charge be verified at the time of filing with the Commission, a reading of the entire statute makes it clear that the Congressional intent in requiring an oath is to prevent the harassment of respondents by reckless charges. However, this purpose can be served by requiring verification before action is taken by the Com-

mission, and this was done in the instant proceeding. Such a construction recognizes the remedial nature of the statute and does not prejudice an unwary victim of discrimination by insistence upon a formal requirement which can be supplied before the respondent is brought into the picture. Accordingly, courts have consistently held that a charge filed within ninety days of an alleged unfair practice need not be accompanied by the oath of the complainant. Sworn verification may occur later. (418 F.2d at 357)

See also *Russell v. American Tobacco Co.*, 374 F.Supp. 286 (M.D.N.C.1973), *aff'd, Russell v. American Tobacco Co.*, 528 F.2d 357 (4th Cir. 1975).

 It is apparent that Congress intended no change in the judicial construction of the oath requirement. To require that all charges be sworn to within the 180-day limit would result in cutting off the rights of complainants who were unaware of the oath requirement. As long as the charge is sworn to before the Commission begins its investigation, the purpose of the oath requirement—prevention of harassment of employers—is fulfilled. Therefore, the court holds that the April 17, 1974 letter constituted a timely filing of a charge with the Commission.

II. *Notice of the Charge*

Respondent contends that the subpoena should not be enforced because it did not receive notice of the charge within ten days of its filing. 42 U.S.C. § 2000e–5(b) states in relevant part:

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, ⸱ . . alleging that an employer . ∴ . has engaged in an unlawful employment practice, the Commission shall serve notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer . . . within ten days, and shall make an investigation thereof.

Respondent received notice of the charge on February 6, 1975, ten months after Ms. Braden's letter was received by the Com-

mission and approximately four weeks after the charge was perfected. It is clear ·that the ten-day requirement has not been satisfied. The question is whether the ten-day requirement is mandatory, so as to bar further Commission investigation of the charge, or merely directory.

Several courts have discussed the ten-day notice requirement and have reached different conclusions. In *EEOC v. Marzetti Co.*, 411 F.Supp. 1036 (S.D.Ohio, 1976), the defendant employer raised the notice issue in the context of a motion to dismiss a suit brought by the Commission. The court concluded that the notice requirement had not been specifically complied with and then considered whether this defeated the court's jurisdiction. The court began by reviewing the decision in *EEOC v. Kimberly-Clark Co.*, 511 F.2d 1352 (6th Cir. 1975), which dealt with the Commission's failure to give notice of failure of conciliation. The court held in *Kimberly-Clark*:

When an agency neglects to follow a procedural rule but its failure inflicts no significant injury on the party entitled to observance of the rule, the error does not prevent further administrative or judicial action. Instead, the error should be considered harmless. (quoted in *Marzetti* at 411 F.Supp. 1038)

The court in *Marzetti* continued:

In evaluating the importance of the notice of the filing of an individual's original charge, it does not logically follow that the notice of the filing of the charge is of more importance to the orderly achievement of the legislative purpose than the notice of failure to conciliate. It would be incongruous to hold that failure of the letter notice should be tested for prejudice while failure of the Section 2000e–5(b) notice should be held to be a jurisdictional necessity. (411 F.Supp. at 1039)

The court concluded that the employer had shown no prejudice and denied the motion to dismiss.

 This court is in agreement with the decision in *Marzetti* and concludes that

the notice requirement is not mandatory. The "prejudice" test was employed by the Fourth Circuit in *EEOC v. Raymond Metal Products Co.,* 530 F.2d 590 (4th Cir. 1976). The court there considered the effect of the Commission's failure to state that it would resume conciliation efforts on receipt of a written request within a stipulated time, reasoning:

> The commission's statutory duty to attempt conciliation is among its most essential functions. It is, therefore, important that it follow its own regulations, especially when it intends to cease administrative efforts and resort to the courts. But not every relaxation of an agency's rules merits dismissal. The imposition of this extreme sanction generally depends on whether the party dealing with the agency was prejudiced. (530 F.2d at 596)

Relying on the above holding of *Raymond Metals,* this court adopts the "prejudice" test in deciding whether the subpoena should be enforced. The respondent has shown no prejudice that resulted from late notification. Rather, the Company states in broad terms that a charge "might" never reach a respondent's attention for years and that this "potential" for prenotification delay was not contemplated by Congress. There are no specific allegations that this particular respondent was prejudiced by the delay.

In addition, an analysis of the other cases that consider the ten-day requirement leads this court to conclude that the considerations at the subpoena enforcement stage differ somewhat from those at the motion to dismiss stage of the proceedings. A comparison of two cases will illustrate this difference. In *EEOC v. Air Guide Corp.,* 395 F.Supp. 600 (S.D.Fla.1975), the court granted the defendant's motion for summary judgment, holding that the Commission's failure to serve the employer with notice within ten days was not a mere technical error but was plainly prejudicial and constituted noncompliance with a condition precedent to suit. The court stated:

> Furthermore, it cannot be argued that the failure to comply with the notice requirement is a mere technical error. The natural effect of a failure to receive notice is plainly prejudicial to the respondent. Where an employer does not receive notification that he has been charged with discrimination in hiring until well after the event in question, relevant forms will in all likelihood have been destroyed. . . . (395 F.Supp. at 604)

In *Clark v. Morgan's Austintown Foods, Inc.,* 405 F.Supp. 1008 (N.D.Ohio 1975), it was contended that the fact that the defendants did not receive notice of the pendency of the proceeding until over three years after the filing of charges with the Commission required dismissal of the action. The defendants relied on the decision in *Air Guide.* The court distinguished *Air Guide* as follows:

> The Court has little difficulty with the holding in *Airguide, supra,* insofar as it visits upon the E.E.O.C. the consequences of a breakdown in the notification system it selected. However, in the instant case, defendants would deny an individual plaintiff his right of action because the notification system developed by someone else failed. In the case at bar, the Court is confronted with two innocent parties. The Court is most reluctant to impute a knowledge of the E.E.O.C. procedures and to require plaintiff to bear the burden of the failure of the mail delivery system. There are, moreover, only general allegations of prejudice to defendants. When confronted with a plaintiff who will be immediately and irreparably harmed by the loss of any cause of action he might have against defendants, and only the scantest allegations of prejudice to defendants resulting from delay in notice, the Court finds that justice is best served by making an exception in this case to the requirement of notice to the employer within 10 days of filing of the charge. (405 F.Supp. at 1010)

■ Thus, the consequences of failure to comply with the ten-day requirement might differ depending on whether a suit is brought by the Commission or by a private party. At the subpoena enforcement stage,

the court does not know if a suit will be brought or, if one is brought, by whom. After investigation, it may be possible for the Commission to resolve the matter through conference, conciliation and persuasion. Or the Commission may, if conciliation fails, bring a civil action. If the Commission does not bring a suit, the private party may do so. As the *Clark* decision illustrates, the failure of the Commission to comply with the ten-day provision may not operate to bar a suit by a private individual. If this court should refuse to enforce a subpoena on the basis of the ten-day provision, it would cut off the right of a private party to bring a suit, a result inconsistent with the theory that a party should not be penalized by the Commission's errors.

The court does not intend by the above discussion to suggest that it approves of the *Air Guide* decision. Rather, this court concludes that *Air Guide* would not be followed in this jurisdiction because it appears to hold that the ten-day requirement is jurisdictional and that the defendant need not show prejudice. However, in the event that *Air Guide* is followed in this jurisdiction, the court has held that its holding should not be applied at the subpoena enforcement stage because it might operate to deprive a private party of his right to sue, a right that should not be affected by the Commission's failure to provide notice.

Therefore, because the respondent has not shown prejudice and because failure to comply with the ten-day provision should not bar subpoena enforcement, the court holds that subpoena enforcement should not be denied on the basis of the ten-day provision.

III. *Deferral*

The respondent's final contention is that the underlying charge is invalid because the EEOC failed to defer the charge to the Florida Commission on Human Relations. Section 706(c) of the Act, 42 U.S.C. § 2000e–5(c) provides:

> In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, *which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto* upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. (emphasis supplied)

According to the Commission, on the date the Braden charge was received by the Commission, there was no state or local 706 deferral agency having jurisdiction over the charge. Therefore, the Commission assumed immediate jurisdiction. In January 1975, the Florida Commission on Human Relations became a 706 Notice agency, and a notice letter was sent to the Florida Commission on February 6, 1975. By letter dated February 21, 1975, the Commission requested information from respondent allegedly necessary to its investigation, and a subpoena was issued on March 11, 1975. (first affidavit of David W. Zugschwerdt) Thus, it is clear that the Commission did not defer the charge to the Florida Commission for the sixty-day period required by the statute. The Commission contends that such deferral was not required because the Florida Commission did not have "authority to grant or seek relief." The Commission further contends that the notice letter of February 6, 1975, was sufficient compliance with the statute.

After the 1972 amendments to Title VII went into effect, the Commission issued detailed procedural rules governing the manner and conditions under which it will defer charges filed with it to state and local agencies. *See* 29 C.F.R. § 1601.12. State and local agencies fall into two categories: Section 706 agencies and notice agencies. A

706 agency is defined in 29 C.F.R. § 1601.-12(c) as follows:

. . . the term '706 Agency' shall refer to an agency to which a charge is deferred. A State or local agency may be granted 706 Agency status for certain bases of discrimination and not for others. A charge shall be deferred where a State or a political subdivision of a State has a State or local law prohibiting the unlawful employment practice alleged, and said State or local law authorizes a State or local agency to grant or seek relief from the unlawful employment practice alleged or to institute criminal proceedings with respect thereto, and such State or local agency has been established and, at the time the charge is submitted to the Commission, is operational and processing charges filed under the State or local law.

A notice agency is defined in 29 C.F.R. § 1601.12(e):

Deferral is not required where there is an Agency which does not satisfy the requirements of paragraph (c) of this section. Where the Commission determines that a State or local agency does not come within the definition of a 706 Agency for purposes of a particular basis of discrimination, it shall so notify the State or local agency in writing and give reasons therefore. The Commission shall, however, notify a State or local agency of the filing of charges for which the State or local agency is not a 706 Agency; for such purposes the State or local agency will be deemed a 'Notice Agency.'

An agency must request to be designated as a 706 agency. 29 C.F.R. § 1601.12(f) provides:

Because of the large number of State and local fair employment practice agencies, only those agencies which notify the Commission of their qualifications under subsection (c) of this section and request designation as '706 Agencies' or 'Notice Agencies' or both will be eligible for such designation. Such notification must be submitted by written request to the Commission's Regional Director in whose region the State or local agency is located.

Those agencies requesting 706 agency status must provide the Commission with certain information and materials so the Commission can make the proper determination of the status of those agencies. The following materials and information are to be included in the agency's request for 706 status:

(1) A copy of the agency's fair employment practices law and any rules, regulations and guidelines of general interpretation issued pursuant thereto.

(2) A chart of the organization of the agency responsible for administering and enforcing said law.

(3) The amount of funds made available to or allocated by the agency for fair employment purposes.

(4) The identity and telephone numbers of the agency attorney whom the Commission may contact in reference to any legal questions that may arise in the process of its review of the agency's application.

(5) A statement certifying the following:

(i) That the State or political subdivision has a fair employment practice law;

(ii) That such law authorizes the applicant agency or authority to grant or seek relief from employment practices found to be illegal under such law or that it authorizes the agency to institute criminal proceedings;

(iii) That such agency or authority has been established and is operational and processing charges filed under such law.

The Commission examines the above materials and makes its determination, thereafter notifying the agency of its decision and, if the agency is not granted 706 agency status, permitting the agency to request a conference concerning the matter.

The respondent relies on *Crosslin v. Mountain States Telephone and Telegraph Co.,* 422 F.2d 1028 (9th Cir. 1970), *remanded* 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618

(1971). The Ninth Circuit in *Crosslin* held that the Arizona civil rights commission was a state authority authorized to seek relief and that the state was entitled to deferral. It further held that since the Commission did not defer, it was without authority to accept a charge of racial discrimination. The Commission had argued that the only sanction or remedy specified by Arizona civil rights laws was a criminal penalty—a fine not to exceed $300. There was no specific authority for injunctive relief or back pay and no provision for class-wide relief.

The court first noted that the state had the power to try to eliminate the alleged unlawful practice through conference, conciliation and persuasion, and that this was the same power Congress had given the Commission. The court reasoned:

> Since Congress has spoken in terms not of ultimate state remedy but of relief to be sought by a state authority, it may reasonably be supposed to have had in mind the type of relief which it had itself authorized the EEOC to seek: elimination of the unlawful practice by 'conference, conciliation and persuasion.' § 2000e–5(a). It may reasonably be credited with the desire to afford the states the same opportunity for settlement that it had afforded the EEOC by its requirement that a charge be filed with the EEOC prior to institution of suit. We so construe the Act. (422 F.2d at 1030)

It could be argued that the above basis for the court's decision in *Crosslin* was undermined by the 1972 amendments which gave the Commission the power to institute suit. If the states are to be afforded the same opportunity for settlement as the Commission, then only those state agencies with the power to institute suit should be entitled to deferral. Congress, however, did not increase the sixty-day time period required for deferral. The significance of the sixty-day period was discussed by the court in *Crosslin* :

> Federal intervention does not depend on lack of suitable state relief. Nor is there any requirement for exhaustion of state remedies. On the contrary, the time limits for bringing a federal suit after the charge has reached the EEOC are clearly not designed to encourage an aggrieved person to await the outcome of state proceedings.
>
> Federal deference to the states is defined only in terms of time: sixty days. This is all, no matter how comprehensive the potential state remedies may be.
>
> The only consequence of the existence of state proceedings worth pursuing beyond voluntary compliance would then appear to be that state and federal authorities after sixty days can simultaneously engage in the business of providing relief. We cannot conceive that Congress felt that such duplication of effort was so desirable that states were to be ignored unless they made it possible.
>
> The phrase 'grant or seek relief,' if it is to be sensibly construed, must, then, be read with the sixty-day time period in mind and the relief that the state agency may seek under subsection (b) must reasonably be read to encompass those means most likely to produce results in the time allowed. Since the modest grace period for state action is hardly likely to accommodate coerced compliance, the opportunity afforded the states is realistically one to achieve voluntary compliance. (422 F.2d at 1031)

 This court agrees with the conclusion in *Crosslin* that "relief" does not mean only the power to institute suit. "Relief" may include the power to seek conciliation of the dispute alone. This conclusion does not mean, however, that any agency which has the power to conciliate *must* be granted the status of a 706 agency. Since the time of the 1972 regulations, not in effect when *Crosslin* was decided, the Commission has before it many materials and other information provided by the state agency relevant to its performance in the elimination of employment discrimination. An examination of those materials, including the rules, regulations and guidelines of the agency and the amount of funds available to it, could lead the Commission to the

reasonable conclusion that the relief is not effective. It is not enough for the respondent to state that the Florida Commission has the power to conciliate. The court must also know the basis for the Commission decision not to grant the requested deferral status and must give the Commission the opportunity to explain its decision to the court.

In the instant case, the Commission has not provided the court with its reasons for its determination. The court has before it only the central provisions of the Florida Human Relations Act, enacted by Chapter 69–287, Laws of 1969, effective July 1, 1969, as last amended by S.B. 269, Laws of 1972, effective October 1, 1972. By Section 13251, the Florida Commission is given the following powers:

(1) To maintain an office in the city of Tallahassee and such other offices within the state as it may deem necessary.

(2) To meet and exercise its powers at any place within the state.

(3) To appoint an executive director and to employ and fix the compensation of hearing examiners, clerks, and such other personnel as may be necessary to adequately perform its functions.

(4) To promote the creation of local commissions on human relations and to cooperate with individuals and state, local and other agencies, both public and private, including agencies of the federal government and of other states.

(5) To accept gifts, bequests, grants, or other payments, public or private, to help finance its activities.

(6) To receive, initiate, investigate, seek to conciliate, hold hearings on, and pass upon complaints alleging discrimination on the grounds of race, color, religion, sex, or national origin and to make recommendations to the parties to eliminate any discrimination.

(7) To hold public or private hearings to determine the facts about instances of discrimination or intergroup tensions.

(8) To recommend methods of elimination of discrimination and intergroup tensions

and to use its best efforts to secure compliance with its recommendations.

(9) To furnish technical assistance requested by persons to facilitate progress in human relations.

(10) To make or arrange for studies appropriate to effectuate the purposes and policies of this part and to make the results thereof available to the public.

(11) To render, at least annually, a comprehensive written report to the governor and to the legislature. The report may contain recommendations of the commission for legislative or other action to effectuate the purposes and policies of this part.

(12) To adopt, promulgate, amend, and rescind rules and regulations to effectuate the purposes and policies of this part and govern the proceedings of the commission, in accordance with chapter 120.

The Florida Commission has the power to conciliate complaints, but it does not have the power to institute suit. It would appear from the face of the Florida statute that the Florida Commission was entitled to deferral. However, as stated above, the court does not have enough information before it to determine whether the Commission acted reasonably in failing to grant Florida 706 agency status. The Commission should present such information to the court before the court decides if deferral was necessary.

The court believes it is important that the Commission's deferral decisions be subject to court review. The legislative history makes it apparent that the deferral provisions were of central importance to Congress. Speaking with reference to the Senate Bill, Senator Humphrey stated:

The major substantive changes give increased emphasis to the role of State and local authorities and to methods of securing voluntary compliance. This is both salutary and consistent with the basic philosophy of the bill—that, wherever possible, the problems dealt with by the bill should be resolved locally and voluntarily. (110 Cong.Rec. 12707 (1964))

In the statutory provision, Congress set forth broad guidelines for deferral, requiring deferral where an agency prohibits the unlawful employment practice alleged and where the agency has the authority to grant or seek relief from the unlawful practice or institute criminal proceedings. The meaning of "grant or seek relief" has not been clarified in the Commission's regulations or through court decisions. In this court's opinion, it is crucial that there be more definite criteria to determine whether an agency is one that grants or seeks relief. Does this include conciliation? Does it require the power to bring suit? What other agency powers are necessary before deferral status will be granted? The Commission should not be granted the exclusive decision-making power in this regard. The courts should review Commission decisions to insure that the Commission is carrying out the intent of Congress. This review is particularly important in view of the Commission's refusal to follow the decision in *Crosslin* and in *Motorola, Inc. v. EEOC*[1], 460 F.2d 1245 (9th Cir. 1972), *remanding with instructions*, 317 F.Supp. 282 (D.Ariz. 1971). The Commission states in its *Compliance Manual*:

> The Commission adheres to the view that *Crosslin,* and the more recent 9th Circuit decision in *EEOC v. Motorola* . . . are incorrect and that State and local agencies that are lacking appropriate enforcement procedures, etc., are not the kind of deferral agencies contemplated by Section 706(c). . . . (*Manual* at 3905)

 Therefore, the court orders that the Commission furnish it with further information concerning the determination that the Florida Commission was not a deferral agency. This information and any further memoranda the Commission would like to submit should be filed within two weeks of the date of this Memorandum and Order. The respondent will have ten days to reply.

The court will then, if requested, set the matter in for a hearing. The only issues remaining to be decided are whether the Commission should have deferred the charge to the Florida Commission and, if it should have deferred, the consequences of its failure to defer. The court asks that counsel submit memoranda on both of these issues.

The Commission argues that failure to defer should be excused because the Florida Commission was given notice of the charge through a letter dated February 6, 1975. The letter stated:

> This is to notify you that we have on file in our office a charge of employment discrimination as captioned above.
>
> Any inquiries regarding this matter should be directed to our office.

 The Commission, however, began investigation of the charge immediately and did not wait sixty days. Such notice is not sufficient to constitute deferral. This same issue was before the court in *Corne v. Bausch and Lomb, Inc.,* 390 F.Supp. 161 (D.Ariz.1975):

> Here the record is clear that E.E.O.C. was notifying Arizona only on a courtesy or 'provisional' basis. There was no jurisdiction intended to be given to Arizona in the matter because E.E.O.C. 'assumed jurisdiction' as shown by its own files, on October 25, 1973, before ever notifying Arizona of what E.E.O.C. classifies as a 'non deferral' case. E.E.O.C. cannot now contend that this was the deferral type notice required by the Act because E.E.O.C. never intended to defer the case. . . . (390 F.Supp. at 164)

The court's final decision on the deferral question must await further proceedings. The court considers the deferral question to be an important one and believes that its importance justifies the slight delay that will result from further proceedings.

---

1. In *Motorola,* the court ordered that the district court retain jurisdiction for a time sufficient for the Commission to notify the Arizona Civil Rights Commission and to allow that commission the statutory deferral period in which to act on the charge. If the Arizona commission chose not to act, then the district court could proceed.

## IV. *Summary*

The court has held that the charge was filed within the limitations period and that the failure of the Commission to receive notice within the ten-day period does not require dismissal in the absence of prejudice. The only issue remaining is the deferral question, and the resolution of that question must await further proceedings as outlined in the opinion.

Accordingly, it is this 16th day of September, 1976, in the United States District Court for the District of Maryland,

ORDERED:

(1) that the Commission submit the requested information and memoranda within two weeks of the date of this Memorandum and Order; and

(2) that the respondent submit any reply within ten days of the Commission's response.