**Bertram M. HADFIELD, Plaintiff, Appellee,**

v.

**The MITRE CORP. and Haig H. Hedison, Defendants, Appellants.**

**No. 77–1034.**

United States Court of Appeals, First Circuit.

Heard April 5, 1977.
Decided Sept. 1, 1977.

John Clarke Kane, Jr., Boston, Mass., with whom George C. Caner, Jr., and Ropes & Gray, Boston, Mass., were on brief, for defendants, appellants.

Hal K. Levitte, Boston, Mass., with whom Dante G. Mummolo, Boston, Mass., was on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, MILLER, Associate Judge,* CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff-appellee Hadfield sued the Mitre Corporation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, claiming that his discharge at age 63 was based on age discrimination. In Hadfield's amended complaint, he asserted that he had brought this alleged discrimination to the attention of the Massachusetts Commission Against Discrimination (MCAD), *see* Mass.Gen.Laws, c. 151B, via two telephone calls. Mitre moved to dismiss on grounds that the court lacked jurisdiction by reason of Hadfield's failure to comply with 29 U.S.C. § 633(b) which provides:

> "In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under [§ 626] before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated . . . .
> If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority." [1]

The district court held an evidentiary hearing to determine whether Hadfield's two telephone calls to MCAD constituted the initiation of "proceedings" within the meaning of § 633(b), thereby complying with what all parties and the district court ap-

---

* Hon. Jack R. Miller of the U.S. Court of Customs and Patent Appeals, sitting by designation.

1. 29 U.S.C. § 626 provides in pertinent part:
"(c) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this Act . . . .
"(d) No civil action may be commenced by any individual under this section until the individual has given the Secretary [of Labor] not less than sixty days' notice of an intent to file such action."

parently then took to be a jurisdictional prerequisite to a federal ADEA suit. The court suspended the hearing midway, however, and ruled that Massachusetts was not a "deferral state" within the meaning of § 633(b), i. e. it was not a "State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice . . . ." Therefore, the court held, it was not necessary for Hadfield to have complained first to the MCAD.

The district court's ruling was based on its understanding of this court's recent decision in *Lugo Garces v. Sagner International, Inc.,* 534 F.2d 987 (1st Cir. 1976). According to the district court,

> "The critical issue in [*Lugo*] *Garces* was whether the state courts of Puerto Rico permitted suits to be brought under the Puerto Rican anti-discrimination acts without prior application to the anti-discrimination agency established by the Commonwealth of Puerto Rico. The Court of Appeals held that the availability of alternate and independent action in the state courts disqualified Puerto Rico as a "deferral state" within the terms of 29 U.S.C. § 633(b)."

The court went on to rule that during the time pertinent to plaintiff's claim, there was available an independent remedy in Massachusetts courts which was not contingent upon initial complaint to MCAD. Accordingly, *Lugo Garces* required a ruling that Massachusetts was not a "deferral state".

The district court granted Mitre leave to bring an interlocutory appeal and this court granted review. In papers filed with this court, Mitre characterized "the issue for review on appeal [as] the correctness of the ruling of the district court that during the relevant period Massachusetts was not a 'deferral state' within the meaning of 29 U.S.C. § 633(b) and that plaintiff therefore was not obliged to file a complaint with the Massachusetts Commission Against Discrimination before bringing the present action." Appellee Hadfield argues the contrary.

In *Lugo Garces, supra,* this court was called upon to determine whether Puerto Rico was a "deferral state" within the meaning of § 633(b). The court noted that the Puerto Rican statute, 29 L.P.R.A. § 146, prohibited age discrimination, thus fulfilling the first requirement of § 633(b). 534 F.2d at 988. The next inquiry, therefore, was whether the Puerto Rican statute "establish[ed] or authoriz[ed] a State authority to grant or seek relief from such discriminatory practice . . . ." We noted that 29 L.P.R.A. § 149 authorized the Puerto Rican Secretary of Labor to "order the payment of any sum owing to [discriminatees], or the fulfillment of any right conferred by sections 146–151 of this title", but expressed doubt that the Spanish text of the statute could be interpreted as doing more than giving the Secretary authority to sue on behalf of discriminatees. 534 F.2d at 989 n. 7. However, we did not rest our holding that Puerto Rico was not a "deferral state" on grounds that the Commonwealth lacked a "specific institutional commitment towards dealing with age discrimination complaints". *Id.* at 989, *quoting Curry v. Continental Airlines,* 513 F.2d 691, 694 (9th Cir. 1975). We went on to note that the Commonwealth authorized a civil action for age discrimination which did not require a discriminatee to complain first to a state agency before commencing suit. Since a plaintiff in the Commonwealth courts could thus bypass the Secretary of Labor we saw no point in requiring a federal plaintiff to initiate administrative processes before filing suit:

> "[I]f we were to say that § 633(b) is satisfied only if a claimant has sought administrative relief through the Secretary of Labor, we would be requiring something of a claimant which the Commonwealth does not require—an ironic result for a principle bottomed on federalism.

> "We conclude, therefore, that § 633(b) would be satisfied by institution of suit in Commonwealth courts, and a sixty day waiting period. As indicated above, this procedure would be pointless. Moreover,

it shows that Puerto Rico has not made the kind of institutional commitment, assuring administrative exploration of all age discrimination claims prior to litigation, on which a duty to defer federal court action may be predicated."

534 F.2d at 990. We have to agree with the district court that this language from *Lugo Garces* can be read as broadly waiving § 633(b)'s deferral requirement in any case where a state has authorized a private cause of action for age discrimination which is not conditioned on a prior complaint to a state agency. But such an application of *Lugo Garces* sweeps too broadly, we think, in view of the specific language of § 633(b) and the policies which it is designed to foster.

 Section 633(b) applies to any state that "has a law prohibiting discrimination in employment because of age *and* establishing or authorizing a State authority to grant or seek relief from such discriminatory practice . . . ." [Emphasis supplied.] By its literal terms, therefore, § 633(b) admits of no exception where a state has authorized a private cause of action not requiring deferral to a state agency.[2] Nor do we find the need for deferral implicitly waived where a state has established an independent cause of action. We think that § 633(b)'s deferral requirement is grounded not only on federalism, *see Lugo Garces, supra* at 990, but also on a decision by Congress that courts and employers should be spared the burden of unnecessary litigation. *See id.* at 989; *Crosslin v. Mountain States Tel. & Tel. Co.,* 422 F.2d 1028, 1030–31 (9th Cir. 1970), *vacated and remanded,* 400 U.S. 1004, 91 S.Ct. 562, 27

L.Ed.2d 618 (1971) (interpreting Title VII). Thus the relevant consideration in determining whether a State has "establish[ed] or authoriz[ed] a State authority to grant or seek relief" within the meaning of § 633(b) is whether the agency is statutorily authorized to seek voluntary compliance. "Since the modest grace period for state action is hardly likely to accommodate coerced compliance, the opportunity afforded the states is realistically one to achieve voluntary compliance." *Crosslin, supra,* at 1031. Viewing *Lugo Garces* in this light, we limit its reasoning to the situation obtaining in Puerto Rico and jurisdictions having similarly limited laws. Since the Commonwealth's Secretary of Labor was authorized to do no more than initiate litigation in behalf of a discriminatee and since the statutory scheme did not contemplate any efforts by him towards voluntary compliance, *see* 534 F.2d at 989 n. 7, deferral would be a meaningless and formalistic ritual. In contrast the Massachusetts scheme contemplates that MCAD must exhaust its conciliation powers before the person discriminated against resorts to litigation. Mass.Gen. Laws c. 151B, § 5. It is clear that MCAD is vested with mediation powers. Therefore, we hold that Massachusetts is a "deferral state".[3]

 Hadfield, in his appellate brief, for the first time raises the related issue of whether § 633(b) requires all plaintiffs to first complain to "deferral state" administrative agencies. He argues for a narrow reading of § 633(b) that would bar initiation of a federal suit only where a plaintiff has voluntarily first complained to a state agen-

---

**2.** That deferral would in no event be triggered by the mere bringing of a private state action is underscored by the wording of § 633(b), barring federal actions brought before the expiration of sixty days after proceedings have been commenced "under *the* State law" (i. e. the law establishing or authorizing a State authority to grant or seek relief). [Emphasis supplied.] Furthermore, § 633(b)'s definition of the initiation of proceedings as the "filing of a written and signed statement of the facts" with the state authority makes it clear that the "proceedings" contemplated by § 633(b) are administrative rather than judicial.

**3.** We reject Hadfield's contention that a holding that Massachusetts is a "deferral state" must await a full evidentiary hearing at which Hadfield proposes to prove that MCAD is not in fact equipped to handle age discrimination complaints. Section 633(b) contemplates no examination beyond the State's statutes. Our authorizing of such a hearing would not only be inconsistent with § 633(b)'s terms but also would constitute an inordinate drain on the district court's resources.

cy and then not waited the requisite sixty days. Thus, Hadfield suggests, even if Massachusetts is "deferral state", he should be barred from suit in federal court only if "proceedings have been commenced under the State law" and he has not waited the specified sixty days. *See Goger v. H. K. Porter Co.,* 492 F.2d 13, 17–18 (3d Cir. 1974) (Garth, J., concurring in the result); *Vazquez v. Eastern Airlines, Inc.,* 405 F.Supp. 1353 (D.P.R.1975). *But see Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834, 844 (3d Cir. 1977); *Curry v. Continental Airlines,* 513 F.2d 691, 693 (9th Cir. 1975); *Goger, supra* at 15 (opinion of the court); *Fitzgerald v. New England Tel. & Tel. Co.,* 416 F.Supp. 617 (D.Mass.1976).

Appellee did not bring this interpretation of § 633(b) to the attention of the district court during the proceedings below. Instead plaintiff conceded in a memorandum of law filed with the district court that § 633(b) required him "to invoke [MCAD's] independent investigative and conciliatory powers." We think that plaintiff may not raise a contrary suggestion for the first time on appeal, but we leave it to the district court to determine whether Hadfield may raise this issue in subsequent proceedings.

Hadfield suggests further that this court might stay the district court action, remand the case for sixty days to MCAD after which the stay would be dissolved, and thereby relieve him of the harsh consequences of ADEA's statute of limitations in the event he were found not to have commenced his suit in conformity to § 633(b). This issue too we leave to the district court, to decide in the first instance whether equity justifies some action to bring Hadfield's suit into compliance with § 633(b), nunc pro tunc. *See Goger, supra* at 16–17. *Cf. Love v. Pullman Co.,* 404 U.S. 522, 525–26, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 928–31 (5th Cir. 1975).

As none of the factors apply which have led us to require reassignment on remand of a reversed case to a new judge, *see Halliday v. United States,* 380 F.2d 270, 274

(1st Cir. 1967), *aff'd,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), we see no reason why the original district judge should not continue.

*Reversed and remanded.*