THE EQUITABLE TRUST COMPANY ET AL. *v.* STATE OF MARYLAND COMMISSION ON. HUMAN RELATIONS

[No. 95, September Term, 1978.]

*Decided April 10, 1979.*

The cause was argued before MASON, WILNER and COUCH, JJ.

*Stanley Mazaroff*, with whom was *George W. Johnston* on the brief, for appellants.

*Risselle Rosenthal Fleisher* for appellee.

MASON, J., delivered the opinion of the Court.

The issues in this case concern the Maryland Human Relations Commission's ("Commission") right to judicial enforcement of a subpoena duces tecum issued against the Equitable Trust Company ("Equitable").

On 18 December 1974 the Commission issued a complaint in its own name against Equitable charging:

> "The above named financial institution is subject to the jurisdiction of the Maryland Commission on Human Relations acting in accordance with Section 12(b) of Article 49B of the Annotated Code of Maryland.
>
> "We have reason to believe the above named financial institution has engaged in unlawful application of financial standards, terms, and conditions regarding mortgage financing, personal credit, and all other forms of credit to individuals and classes protected by Article 49B. Such unlawful practices have the effect of causing differential treatment in credit evaluation and the determination of credit worthiness of racial minorities and the protected sex class.
>
> "An investigation of said practices shall be undertaken pursuant to Article 49B of the Annotated Code of Maryland. This investigation shall examine and look into the specific facts and circumstances concerning the holding of different

standards of credit worthiness for men and for women, differential evaluation of income of males and females, and refusing services to females when changes are made in marital status. On the basis of investigation into these facts and circumstances the Maryland Commission on Human Relations will determine whether there is probable cause to believe that there is validity to the complaints."

This complaint was referred to the Commission staff for investigation and ascertainment of the facts. Following several unsuccessful attempts to obtain information from Equitable during this investigation, the Commission on 23 October 1976 issued a subpoena duces tecum directing Equitable to deliver the documents requested. Upon Equitable's refusal to comply with the subpoena, the Commission petitioned the Circuit Court of Baltimore City to direct Equitable to deliver the documents. After a hearing, the chancellor [1] ordered Equitable to produce the documents specified in the subpoena and dismissed Equitable's counterclaim for the production of certain of the information under the Maryland Public Information Act. Article 76A, Annotated Code. From this order Equitable appeals and presents the following arguments in challenging the validity and enforceability of the subpoena:

"I. Before the Commission validly may issue and enforce compliance with a subpoena duces tecum pursuant to a Commission complaint under § 12(b) of Article 49B of the Annotated Code of Maryland, appellants are entitled to be apprised of any reliable information indicating discriminatory practices received by the Commission and of any preliminary investigation of that information by the Commission.

"II. Since the Commission complaint in this action was not sworn as required by § 12 of Article 49B of

---

1. The Honorable Robert L. Sullivan, Jr., heard this matter and prepared the Opinion and Order giving rise to the instant appeal. Because of Judge Sullivan's demise, the actual Order of Court appealed from was signed, pursuant to Maryland Rule 528, by the Honorable James A. Perrott of the Circuit Court of Baltimore City.

the Annotated Code of Maryland, the Commission did not validly issue and may not enforce compliance with its subpoena duces tecum.

"III. The Commission's complaint and the subpoena duces tecum issued pursuant thereto are deficient since the Commission has failed to state, as required by § 12 of Article 49B, the particulars, including the dates, of the discrimination charged.

"IV. Since the Commission complaint fails to charge discrimination within the ambit of Article 49B, the subpoena duces tecum was not validly issued and may not be enforced.

"V. Since the Commission is seeking financial records protected from disclosure by Article 11, §§ 224-27 of the Annotated Code of Maryland the subpoena duces tecum may not be enforced.

"VI. Since the Commission is seeking data irrelevant to its complaint, the subpoena duces tecum should not be enforced.

"VII. Since the documents sought by the Commission are so voluminous as to be unduly burdensome to provide, the court should deny enforcement to the Commission's subpoena duces tecum.

"VIII. The Maryland Public Information Act guarantees appellants the right to information concerning any reliable information received by or any results of a preliminary investigation conducted by the Commission."

I, II and III.

In arguments I, II and III, which we will consolidate and consider together, Equitable's attack on the validity and enforceability of the subpoena is premised solely on alleged defects in the Commission complaint. Equitable, in essence, argues that the subpoena should not be judicially enforced because the Commission complaint was not sworn and lacked

the particulars required by Article 49B, section 9 (a).[2] Equitable further contends the complaint failed to disclose the reliable information purportedly received, or any evidence that a preliminary hearing had been conducted as required by section 9 (b).[3]

Instructive on the issue of particulars required in a complaint during the investigative stage of a proceeding, such as here, is *Banach v. State of Maryland, Commission on Human Relations,* 277 Md. 502 (1976). In that case several individuals filed complaints with the Commission under section 9 (a) alleging discrimination by the A. S. Abell Company. After refusal by the company to supply the requested data, the chairman of the Commission authorized a preliminary investigation under section 9 (b) and issued a subpoena duces tecum to aid in the investigation. In challenging

---

2. Section 9 (a) provides:

"(a) Any person claiming to be aggrieved by an alleged discrimination prohibited by any section of this article may make, sign and file with the Human Relations Commission (hereinafter referred to as the 'Commission') a complaint in writing under oath. The complaint shall state the name and address of the person, firm, association, partnership, corporation, state agency, department or board alleged to have committed the act of discrimination together with the particulars thereof; and the complaint also shall contain such other information as may be required from time to time by the Commission. A complaint must be filed within six months from the date of the occurrence alleged to be a violation of this article. A complaint filed with the federal or with a local human relations commission within six months from the date of occurrence shall be deemed to have complied with the provisions of this section."

Chapter 684, Acts 1978, effective July 1, 1978, renumbered this section from 12 (a) to section 9 (a).

3. Section 9 (b) provides:

"(b) Whenever the Commission has received reliable information from any individual or individuals that any person has been engaged or is engaged in any discriminatory practice within the scope of this article, and after a preliminary investigation by the Commission's staff authorized by the chairman or vice-chairman it is satisfied that said information warrants the filing of a complaint, the Commission, on its own motion, and by action of not less than three commissioners, may issue a complaint in its name in the same manner as if the complaint had been filed by an individual."

Chapter 684, Acts 1978, effective July 1, 1978, renumbered this section from 12 (b) to section 9 (b) and substituted "three" for "four" near the end of the subsection.

the subpoena the A. S. Abell Company argued, among other things, that the Commission was not empowered to issue the subpoena because: (1) the individual complaints lacked the particulars required by section 9 (a) and (2) that before a preliminary investigation can be conducted under section 9 (b), the Commission must establish that the information received is reliable.

In disposing of the contention that the Commission was without authority to issue the subpoena because the individual complaints lacked the particulars required by section 9 (a), the Court observed:

"The argument that appellants were not provided the 'particulars' required by § 12(a) [9(a)] is, at least in part, attenuated by our holding that subpoenas may be issued during the investigative stage preceding the filing of a formal complaint. In essence, appellants contend that since the four individual complaints are defective due to the absence of the necessary particulars, the commission is not empowered to issue the subpoenas. This argument misconceives the role of the administrative complaint and the relationship between the investigative and adjudicatory functions of the commission.

"Notwithstanding the 'particulars' requirement, a complaint filed with the commission under § 12(a) [9(a)] merely triggers the investigative process. If, as we have seen, the commission then wishes on the strength of such a complaint to issue a complaint in its own name it must first conduct a preliminary investigation. In any event, an investigation is mandated by § 13(a) [10(a)] 'after the filing of any complaint,' and it is only after the results of that investigation are reduced to written findings that the statute requires notice to be given the respondent against whom the complaint has been made." *Id.* at 513.

60

The Court further observed that it is at the adjudicatory stage and not at the non-judicial investigative stage of the proceedings that the traditional safeguards of fairness, *i.e.,* notice of charges and opportunity to be heard, must be demonstrated.

"It is only when the conciliation process prescribed by § 13 [10] fails and the hearing stage contemplated by § 14 [11] is invoked that the investigative yields to the adjudicative function. *See Atchison, Topeka and Santa Fe Railway Co. v. Lopez,* 216 Kan. 108, 531 P. 2d 455, 462 (1975). Only at that juncture must the charges be capable of withstanding attack for lack of particularity." *Id.* at 515.

In answering the argument that the information received by the Commission must be "reliable" before it can initiate a preliminary investigation, the Court said, "[t]he determination whether the information received from individuals is 'reliable' can only rest within the sound administrative discretion of the Commission." *Id.* at 516.

Returning to the present case, both parties apparently rely on *Banach* for support. The Commission contends that *Banach* is fully dispositive of Equitable's argument that the subpoena is invalid and unenforceable because of alleged defects in the complaint. Equitable, on the other hand, argues that *Banach* did not address the issue of a defective Commission complaint, but was concerned with the lack of particulars in complaints filed by several individuals. Further, according to Equitable, the *Banach* court implicitly held that a Commission complaint, in contrast to an individual complaint, should be particularized to reflect compliance with the statutory requirements of sections 9 (a) and 9 (b).

In the present case, the proceedings have barely reached the threshold of the investigative stage mandated by section 10 (a),[4] and as the *Banach* court said, "[i]t is only when the

---

4. Section 10 (a) of Article 49B provides:

"(a) After the filing of any complaint the executive director shall consider the complaint and shall refer it to the Commission's

conciliation process prescribed by section 13 [10] fails and the hearing stage contemplated by section 14 [11] is invoked that the investigative yields to the adjudicative function . . . . *Only at that juncture must the charges be capable of withstanding attack for lack of particularity." Id.* at 515. (Emphasis supplied). Obviously, if particulars are not required until the adjudicatory stage of the proceedings, it necessarily follows that an unparticularized Commission complaint issued at the investigative stage of the proceedings would not preclude issuance of a valid, enforceable subpoena. Consonant with this view see *Augusta Building and Loan Association v. The State Commission,* 39 Md. App. 466 (1978), where this Court, in responding to a claim of alleged defects in the Commission complaints specifically held that "[a]ny alleged defects in the complaints in this case, which were filed after the initiation of the preliminary investigation, are irrelevant to the validity of the properly executed subpoena duces tecum." *Id.* at 470. See also *Soley v. State Commission on Human Relations,* 277 Md. 521 (1976) where the Court of Appeals held that the subpoena power delegated to the Commission is clearly available following the issuance of a Commission complaint. "At that point the staff becomes engaged in an investigation pursuant to the command of § 13 (a) [§ 10 (a)] that may lead directly to a finding of probable cause to believe that a discriminatory act has been committed, and may conceivably eventuate in the quasi-judicial hearing contemplated by § 14 [§ 11]." *Id.* at 524-25.

Although the factual and legal issues involved in *Banach* may have been different from those in this case, we think *Banach* makes clear that during the investigative stage of a proceeding, *i.e.,* when the Commission is attempting to discover and procure evidence, as opposed to proving a pending charge or complaint, the lack of specificity or other

staff for prompt investigation and ascertainment of the facts. The results of the investigation shall be made as written findings. A copy of the findings shall be furnished to the complainant and to the person, firm, association, partnership or corporation. . . ."

Chapter 684, Acts 1978, effective July 1, 1978, renumbered former § 13 to be present § 10.

non-jurisdictional defects in a complaint will not render invalid or unenforceable an otherwise properly issued subpoena. Therefore, the alleged defects in the instant complaint were insufficient to defeat the issuance of the subject subpoena.

### IV.

The Commission complaint charged Equitable with engaging in "unlawful application of financial standards, terms and conditions regarding mortgage financing, personal credit, and all other forms of credit to individuals and classes protected by Article 49B." The subpoena issued pursuant to this complaint requested, among other things, documents, memoranda, and other writings regarding the policy followed by the bank in extending automobile loans, consumer loans, mortgage loans and Bankamericard transactions. Equitable opines that the alleged charges of discrimination are not within the ambit of the Commission's authority because the jurisdiction of the Commission with respect to discrimination in financing is expressly circumscribed by section 22 (a) [5] of Article 49B which, in relevant part, provides:

"(a) It shall be unlawful for any bank, savings and loan institution, credit union, insurance company, or other person regularly engaged in the business of making mortgages or other loans for the purchase, construction, improvement, or repair or maintenance of dwellings to deny such a loan to a person applying therefor, or discriminate against him in the fixing of the down payment, interest rate, duration, or other terms or conditions of such a loan, because of the race, color, religion, creed, marital status, sex, national origin or physical or mental handicap of such person, or of any member, stockholder, director, officer, or employee of such person, or of the prospective occupants, lessees, or tenants of the

---

5. Chapter 684, Acts 1978, effective July 1, 1978, renumbered this section from section 23 (a) to section 22 (a).

dwelling or dwellings in relation to which the application for a loan is made."

Even if we assume that the discrimination alleged in the Commission complaint is not within the contemplation of section 22 (a) and that the Commission cannot pursue its investigation under authority of this section, we do not agree with Equitable that the Commission's authority to investigate discrimination in financing is strictly limited to transactions delineated in section 22 (a).

The Commission contends, and we agree, that its authority to investigate the instant charges derives from section 8 [6] of Article 49B which in pertinent part reads:

"It is unlawful for any person, business, corporation, partnership, co-partnership or association or any other individual, agent, employee, group or firm which is licensed or regulated by the Department of Licensing and Regulations as set out under Article 41, Subtitle 15, 221A(a), 'The Department of Licensing and Regulations,' to refuse, withhold from, deny or discriminate against any person the accommodations, advantages, facilities, privileges, sales or services because of the race, sex, creed, color or national origin, marital status, or physical or mental handicap of any person."

Included within the jurisdiction of the Department of Licensing and Regulation is the Bank Commissioner. Article 41, section 221A. Inasmuch as section 8 demonstrates a clear legislative intent to prohibit discrimination by regulatees of the Department of Licensing and Regulations, it follows that Equitable, a regulatee of the Bank Commissioner, is subject to the authority of the Commission by virtue of section 8. Consequently, the discrimination alleged in the Commission complaint is not outside the orbit of the Commission's

---

**6.** Chapter 684, Acts 1978, effective July 1, 1978, renumbered this section from 11C to section 8. Also, it added "physical or mental handicap" near the end of the section, and deleted certain surplus language.

jurisdiction. Therefore, the Commission can validly conduct the subject investigation and issue a subpoena in aid thereof.

Equitable further argues that if section 8 is also construed as vesting authority in the Commission to investigate discrimination in financing, section 22 (a) becomes meaningless because, according to Equitable, the canons of construction require the specific language of section 22 (a) to control over the general language of section 8. In support of its position Equitable quotes the following passage from *Maguire v. State,* 192 Md. 615, 623 (1949):

> "It is an old and familiar rule that 'where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment. . . .' This rule applies wherever an act contains general provisions and also special ones upon a subject which, standing alone, the general provisions would include. . . ." (Citations omitted).

However, the Court of Appeals in *Rafferty v. Comptroller,* 228 Md. 153, 158 (1967) said:

> "There is, of course, a rule of statutory construction to the effect that the general language of one part of a statute may be controlled by the more specific phraseology of another part, . . ., but there is also an elementary rule of construction requiring that a statute shall so be interpreted as to give meaning to each of its provisions so as not to render any of them nugatory." (Citations omitted).

Further, where two statutory provisions, such as we have here, are neither irreconcilable nor mutually repugnant they should be construed in harmony even though the statutes were passed at different times and contain no reference to

each other. *Department of Natural Resources v. France,* 277 Md. 432, 461 (1976).

Moreover, in holding that the Commission's authority to investigate the instant complaint of discrimination in financing derives from section 8, a general enactment, and not from section 22 (a), a particular enactment, we have, in effect, applied the statutory rule of construction expressed in *Maguire* and urged by Equitable. Stated another way, the general language of section 8 vests authority in the Commission to investigate cases of discrimination in financing that are not included within the specific provisions of section 22 (a).

## V.

Equitable next attacks the subpoena by contending the Commission was seeking financial records protected from disclosure under sections 224-227 of Article 11 of the Maryland Code. Section 225 provides:

> "A fiduciary institution may not disclose to any person, except to the customer or his duly authorized agent, any financial records relating to that customer of that fiduciary institution unless:
>
> (a) The customer has authorized disclosure to the person; or
>
> (b) The financial records are disclosed in response to a lawful subpoena, summons, warrant or court order which meets the requirements of § 226 (a)."

Section 226 (a) requires a subpoena to be "served upon the customer and upon the financial institution; however, the court for good cause may waive service of the subpoena. . . upon the customer." Because we have already determined that the subpoena was lawful, and the statute permits waiver of service upon the customer by the court, the exception set forth in section 225 (b) permitting disclosure of the subpoenaed records applies. Furthermore, the chancellor found, and we agree, that the records sought by the

Commission were not within the protected classes of documents enumerated in section 224 (a) (2).[7]

## VI.

Equitable next argues that the subpoena should not be enforced because the Commission is seeking data irrelevant to its complaint. Section 11 of Article 49B empowers the Commission to issue subpoenas to compel the production of only those books, papers and records which are relevant or necessary for its proceedings. Equitable contends that the Commission complaint limits its investigation to allegations of sex discrimination. Therefore, the racial data sought by the subpoena is irrelevant to the complaint. The predicate for this argument is the third paragraph of the Commission complaint which reads:

> "An investigation of said practices shall be undertaken pursuant to Article 49B of the Annotated Code of Maryland. This investigation shall examine and look into the specific facts and circumstances concerning the holding of different standards of credit worthiness for men and for women, differential evaluation of income of males and females, and refusing services to females when changes are made in marital status. On the basis of investigation into these facts and circumstances the Maryland Commission on Human Relations will

---

7. Section 224 (a) (2) provides:

"(2) The term 'financial records' means any original or any copy of:

(i) A document granting signature authority over a deposit or share account;

(ii) A statement, ledger card, or other record on any deposit or share account, which shows each transaction in or with respect to that account;

(iii) A check, clear draft, or money order drawn on an institution or issued and payable by an institution; or

(iv) Any item, other than an institutional or periodic charge, made pursuant to any agreement by an institution and a person which constitutes a debit or a credit to that person's deposit or share account if the item is not included in subparagraph (a) (2) (iii) of this section."

determine whether there is probable cause to believe that there is validity to the complaints."

Equitable apparently ignores the second paragraph of the Commission complaint which states:

"We have reason to believe the above named financial institution has engaged in unlawful application of financial standards, terms, and conditions regarding mortgage financing, personal credit, and all other forms of credit to individuals and classes protected by Article 49B. Such unlawful practices have the effect of causing differential treatment in credit evaluation and the determination of credit worthiness of *racial minorities and the protected sex class.*" (Emphasis supplied).

Like the chancellor below, we are hard pressed to understand why the Commission, after stating in the second paragraph of the complaint that it had reason to believe Equitable was engaging in unlawful financing practices and that such practices resulted in a different treatment of "racial minorities and the protected sex class," should be limited to investigating only sex discrimination. We think the requested data was relevant and necessary to the proceedings. Additionally, the case of *EEOC v. United States Fidelity and Guaranty Co.,* 420 F. Supp. 244 (D. Md. 1976) relied on by Equitable is inapposite. In that case the court, in answering a question raised concerning the scope of the subpoena, said: "The Commission is entitled only to those records identified by sex and not by race. The underlying charge alleges *exclusively sex discrimination,* and Ms. Braden is Caucasian. Therefore, information identified by race is not relevant to the instant investigation and cannot be obtained." (Emphasis supplied) *Id.* at 247.

## VII.

The final argument advanced by Equitable in challenging the subpoena is that the documents sought by the Commission are so voluminous that compliance would be

unduly burdensome. The subpoena sought documents with respect to fifteen categories of information relating to Equitable's lending practices and policies. According to Equitable, "in order to develop the information sought by the Commission, Equitable would be forced to collate data from over 63,000 accounts, which, conservatively estimated, would consume 9,600 work hours. The cost of such an undertaking would be staggering. Equitable, were it to attempt to supply the documents, memoranda and other writings sought by the subpoena duces tecum, would have to expend, again conservatively estimated, $96,000.00."

In determining whether the information subpoenaed by the Commission was relevant and within its investigatory powers, we are guided by the principles established in *United States v. Morton Salt,* 338 U. S. 632, 652 (1950). There the Supreme Court declared:

> "Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. . . *But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant."* (Citation omitted) (Emphasis supplied).

*Accord, Oklahoma Press Publishing Co. v. Walling,* 327 U. S. 186, 208-09 (1945).

In *Banach, supra,* the Court of Appeals adopted the three-fold test articulated in the *Oklahoma Press Pub. Co. v. Walling* case for determining the validity of a subpoena issued by an administrative agency: "[w]hether the inquiry is authorized by statute, the information sought is relevant to the inquiry, and the demand is not too indefinite or overbroad." *Id.* at 506.

Applying the above principles to the present case, the requested documents clearly meet the test articulated by the Supreme Court and the Court of Appeals. The statutory authority for the inquiry is section 8, Article 49B, which makes it unlawful for any entity, such as Equitable, licensed

or regulated by the Department of Licensing and Regulations "to refuse, withhold from, deny or discriminate against any person the accommodations, advantages, facilities, privileges, sales or services because of race, sex, creed, color, national origin, marital status, or physical or mental handicap of any person." Further, section 11 authorizes the Commission to issue subpoenas for the production of records and documents relevant, or necessary for proceedings under section 8.

As to the relevancy of the information requested, the Commission complaint charges Equitable with discrimination "in mortgage financing, personal credit, and all other forms of credit to individuals and classes protected by Article 49B." Plainly, the documents sought are relevant to the investigation of these charges. Moreover, we do not think the information and materials demanded are too indefinite or overbroad. The subpoena revealed the subject matter of the inquiry, specifically described the requested material, and called for documents and records covering a limited period of time (12 months).[8]

Equitable contends that even if the materials sought are relevant the subpoena is unreasonable because the cost of compliance would be excessive and unduly burdensome. In support of this contention Equitable cites *Oklahoma Press Publishing Co. v. Walling, supra,* wherein the Court, after observing that Fourth Amendment principles might apply to administrative subpoenas of corporate records stated:

> "[T]he Fourth [Amendment], if applicable, at most guards against abuse only by way of too much indefiniteness or breadth in things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.
>
>     \* \* \*
>
> "Beyond this the requirement of reasonableness,

---

8. Excepted from the court's order were items relating to mortage loan applications which covered a period of two years.

including particularity in 'describing the place to be searched and the persons or things to be seized,' also literally applicable to warrants, comes down to *specification of the documents adequate, but not excessive for the purposes of the relevant inquiry.* Necessarily, as has been said, this cannot be reduced to a formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." 327 U.S. at 208-09. (Emphasis supplied) (footnote omitted).

We do not think the subpoenaed documents were excessive for the purpose and scope of the inquiry. In *Brown v. United States,* 276 U. S. 134 (1928) a subpoena was enforced which called for documents covering a period of two and one-half years, with reference to eighteen different items. The court said: "The subpoena . . . specifies a reasonable period of time and, with reasonable particularity, the subjects to which the documents called for relate." *See also Wheeler v. United States,* 226 U. S. 478 (1913). In *McGarry v. Security and Exchange Commission,* 147 F. 2d 389, 392 (10th Cir. 1945) the court said:

"The test of the validity of the subpoena is not the extent of the books and records called for, but whether those called for are pertinent and relevant to the inquiry. The process is lawful if it confines its requirements within the limits which reason imposes in the circumstances of the particular case." (Footnote omitted).

Numerous decisions have also upheld the validity of subpoenas requiring the production of vast numbers of documents. *See Federal Trade Commission v. Crafts,* 355 U. S. 9 (1957); *Civil Aeronautics Board v. Hermann,* 353 U. S. 322 (1957); *Cudmore v. Bowles,* 145 F. 2d 697 (D.C. Cir. 1944), *cert. denied,* 324 U. S. 841 (1945).

As to the cost of compliance, the contention of Equitable is similar to that made in the case of *EEOC v. United States Fidelity and Guaranty Co.,* 414 F. Supp. 227 (D. Md. 1976).

There the court held that even if compliance would be costly and time consuming, such a burden standing alone was an insufficient basis for refusal to enforce the subpoena. In addition, we find nothing in the language of section 11 that limits the enforcement of a subpoena on the basis of cost, or some other burden compliance would impose. The court in *EEOC v. United States Fidelity and Guaranty Co., supra,* quoting from *H. Kessler & Co. v. EEOC,* 53 F.R.D. 330 (N.D. Ga. 1971), *aff'd,* 468 F. 2d 25 (5th Cir. 1972), *rev'd on other grounds on rehearing en banc,* 5 Cir. 472 F. 2d 1147, *cert. denied,* 412 U. S. 939, 93 S. Ct. 2774, 37 L.Ed.2d 398 (1973), stated:

> "If the information or records sought is relevant or material to the charge under investigation and the EEOC proceeds as authorized by the statute, then any inconvenience or difficulty (which is actually inherent in any compulsory process proceeding) must be considered as a 'part of the social burden of living under government.' (53 F.R.D. at 336)."

The chancellor below, in concluding that compliance with the subpoena was not too expensive or burdensome, aptly stated:

> "[T]he issue involved here is not so much the number of documents involved, but the relevancy of those documents. The defendants have placed too much emphasis on the number of documents involved. The fact that compliance will be expensive, inconvenient, or interfere with the conduct of the defendant's business alone does not ordinarily afford a basis for non-enforcement of a subpoena.
>
> * * *
>
> "Only if the difficulty of compliance was plainly out of proportion to the end sought would this court find an undue burden which would compel this court to deny enforcement of a subpoena. Such a lopsided scale does not exist here." (Citations omitted).

## VIII.

Equitable, pursuant to the Maryland Public Information Act, Article 76A, Annotated Code, filed a counterclaim seeking access to the following information:

"1. the identity of any individual or individuals from whom the Commission received reliable information that appellants were engaged in discriminatory acts or practices as alleged in the Commission's complaint;

2. a description of this reliable information;

3. the date on which the information was received by the Commission;

4. the identity of the member(s) of the Commission staff who conducted any preliminary investigation prior to the issuance of the Commission complaint;

5. a description of any preliminary investigation; and

6. the date on which the chairman or vice chairman of the Commission authorized any preliminary investigation on which the Commission complaint of December 18, 1974 is based."

The threshold question is whether the Maryland Public Information Act requires the Commission to furnish, at this stage of the proceeding, the information sought by Equitable. The Commission, which has the burden[9] of justifying non-disclosure, asserts that the records sought by Equitable are protected by exceptions contained in section 3 of Article 76A. With certain exceptions, section 3 (a) provides that "the custodian of any public records shall allow any person the right of inspection of such records or any portion thereof. . . ."

---

9. Article 76A, section 5 (b) (1), Chapter 1006, effective July 1, 1978, in relevant part provides:

"[T]he court may examine the contents of the records in camera to determine whether the records or any part thereof may be withheld under any of the exemptions set forth in § 3, and the burden is on the defendant to sustain its action.

The first exception on which the Commission relies for non-disclosure of the records is section 3 (a) (i) which exempts records from mandatory disclosure if "such inspection would be contrary to any state statute." The Commission contends that section 13 of Article 49B "is the sort of statutory provision contemplated by the legislature when it enacted that exception." Section 13 reads, in part, as follows:

"(a) During the investigation of any complaint alleging a violation of §§ 5, 7, 14, 15, 16, or 22 of this article, and until said matters reach the stage of public hearings, the activities of all members of the Commission and employees thereof in connection with said investigation shall be conducted in confidence and without publicity, and the Commission shall hold confidential any information in relation thereto, including the identity of the complainant and the respondent, except that

\* \* \*

"(b) Any member of the Commission or employee thereof, who violates the provisions of this section shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not more than $1,000.00 or imprisoned not more than one year or both."

The fundamental flaw with the Commission's argument is that the investigation in this case is bottomed on alleged violations of section 8 which is not designated in section 13 as one of the sections requiring that the "investigation shall be conducted in confidence and without publicity." Thus, the records sought by Equitable cannot be denied on the basis that such disclosure would be "contrary to any state statute."

The second exception on which the Commission relies for denying the requested information is section 3 (b) (i) [10] which provides:

---

10. This section was substantially amended effective July 1, 1978, by Chapter 1006. Because the changes affect procedural rather than substantive rights, the amended law will apply. Yorkdale Corp. v. Powell, 237 Md. 121 (1963); Janda v. General Motors, 237 Md. 161, 168 (1964).

"(b) The custodian may deny the right of inspection of the following records or appropriate portions thereof, unless otherwise provided by law, if disclosure to the applicant would be contrary to the public interest:

(i) Records of investigations conducted by, or of intelligence information or security procedures of, any sheriff, county attorney, city attorney, State's attorney, the Attorney General, police department, or any investigatory files compiled for any other law-enforcement, judicial, correctional, or prosecution purposes, but the right of a person in interest to inspect the records may be denied only to the extent that the production of them would (A) interfere with valid and proper law-enforcement proceedings, (B) deprive another person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source, (E) disclose investigative techniques and procedures, (F) prejudice any investigation, or (G) endanger the life or physical safety of any person; "

The Commission argues that its "records in the case at bar also are protected by subsection 3 (b) (i) of Article 76A. This should be clear from a reading of §§ 13 [10] and 15 [12] of Article 49B, which set out the functions, duties and powers of the Maryland Commission on Human Relations as a law enforcement agency, with specific emphasis on investigation."

This sweeping assertion falters because the Commission is not a named "law enforcement agency" within the meaning of section 3 (b) (i) whose records are presumed to be compiled for law enforcement or prosecution purposes.

In *Superintendent v. Henschen,* 279 Md. 468 (1977), the Court of Appeals in construing section 3 (b) (i) observed:

"Section 3 (b) (i) is in the disjunctive, excepting records of investigation by the enumerated types of law enforcement agencies *or* investigatory files

compiled for any other law enforcement or prosecution purposes. The statutory provision exempts from the mandatory disclosure requirement two categories of documents: (1) investigatory records of certain named law enforcement agencies; (2) investigatory records of other governmental agencies which were compiled for law enforcement or prosecuting purposes. It is only with respect to the second category that there is an express requirement that the records be compiled for law enforcement or prosecution purposes. The statutory language, and particularly the use of the word *other* before the phrase 'law-enforcement or prosecution purposes,' suggests that the Legislature believed that investigatory records of one of the enumerated law enforcement agencies were presumptively for law enforcement or prosecution purposes, but that investigatory records compiled by other agencies might or might not be for such purposes. (Emphasis in original). *Id.* at 475.

Although the Commission describes itself as a "law enforcement agency, with specific emphasis on investigation" it is not one of the enumerated agencies listed in section 3 (b) (i). *Accord, Prince George's County v. Commission*, 40 Md. App. 473 (1978). Consequently, in order for a 3 (b) (i) exception to apply to the Commission's records, it must be expressly shown that the data sought by Equitable is part of investigatory files compiled by the Commission for law enforcement or prosecution purposes.

Although *Henschen, supra* was not concerned with and did not answer the question of when records of an agency other than one named in section 3 (b) (i) are considered as compiled for "law enforcement or prosecution purposes," there is a spate of federal cases which hold, as a general proposition, that where files are prepared in connection with related government litigation and adjudicative proceedings currently under way or contemplated, they are compiled for law enforcement purposes within the meaning of 5 U.S.C., section 552 (b) (7) of the Federal Freedom of Information Act (FOIA)

which closely parallels Article 76A, section 3 (b) (i). Exemption 7 (A) provides that disclosure is not required of "matters that are.... investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... interfere with enforcement proceedings."

For example, in *Wellman Industries, Inc. v. NLRB,* 490 F. 2d 427 (4th Cir. 1974), pursuant to the FOIA, the employer sought affidavits obtained by an investigator during an election investigation. In denying the relief sought the Court held the affidavits exempt from disclosure under section 552 (b) (7). In disposing of the employer's contention that the investigatory files exception did not apply, the Court said:

> "[T]hough procedures vary, if aimed at enforcement of the NLRA we think they are 'for law enforcement purposes.'
>
> "The legislative history of exemption 7 clearly supports such an interpretation. The House Report states:
>
>> 'This exemption covers investigatory files related to enforcement of *all kinds of laws, labor and securities laws as well as criminal laws.* This would include files prepared in connection with related Government litigation and adjudicative proceedings.' " (Emphasis in original). *Id.* at 430.

Of like import see *Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Balto.,* 508 F. 2d 945 (4th Cir. 1974); *Pillar v. S. S. Hess Petrol,* 55 F.R.D. 159 (1972); *Benson v. United States,* 309 F. Supp. 1144 (D. Neb. 1970); *Cooney v. Sun Shipbuilding and Drydock Co.,* 288 F. Supp. 708 (E.D. Pa. 1968).

Following the reasoning of *Wellman* and the other cited federal authorities, we conclude that the information sought by Equitable was compiled by the Commission for purposes of enforcing the anti-discrimination laws under section 8 of Article 49B, and that the records in question are part of investigatory files compiled for law enforcement purposes within the meaning of section 3 (b) (i). Having determined that the requested information comes within the investigatory files exception, we must now determine whether this

information should be accorded immunity from disclosure. Resolution of this question depends on whether disclosure would produce one of the seven harms enumerated in section 3 (b) (i).

Equitable urges us "to grant their counterclaim and order disclosure of the information sought, or, in the alternative, to direct the court below to review the materials sought *in camera* and to exempt from disclosure only those materials, if any, which will actually interfere with the Commission's investigation." In support of this argument Equitable relies heavily on *Charlotte-Mecklenburg Hospital Authority v. Perry,* 571 F. 2d 195 (4th Cir. 1978). There, the hospital sought production of sworn statements, by EEOC investigators in connection with charges of employment discrimination against the hospital. EEOC objected to disclosure on the basis that its investigatory records were *per se* non-disclosable, and because disclosure would "interfere with enforcement proceedings." The Court, after reviewing the legislative history of the 1974 amendments to exemption 7 of the FOIA, concluded:

> "[I]n order that the courts in applying such exemption might be provided with an adequate factual basis for determining whether disclosure would 'interfere with enforcement proceedings,' . . . , Congress by the same Amendments gave the courts the right to make *in camera* inspections of all requested documents prior to ruling on disclosure under exemption 7.
>
> "It is manifest from this legislative history of the 1974 Amendments that Congress intended to proscribe the use of a mechanical test such as that enunciated in *Title Guarantee* in favor of 'a case-by-case' factual inquiry in determining whether to require disclosure of investigatory records." *Id.* at 202.

In affirming the decision of the district court, the court of appeals said:

> "In our opinion, the district court conformed in its

decision to the procedure established by the 1974 Amendments. It examined *in camera* the affidavits obtained by the EEOC from the charging parties. Based on that *in camera* inspection, it concluded that the statements procured from all present employees of the Hospital should not be disclosed because such disclosure might interfere with the EEOC investigation but that the disclosure of the statements procured from former employees would not interfere or disclose confidential sources. It accordingly denied the disclosure of the statements of present employees and ordered the disclosure of those of former employees. In our opinion the court did not abuse its discretion in the selection of the records to be disclosed." *Id.* at 202.

In further· support of its position urging us to order disclosure of the information sought, or remand the case for an *in camera* review by the lower court with--directions to exempt from disclosure only the records that would interfere with the Commission's investigation, Equitable cites the case of *Robbins Tire and Rubber Co. v. NLRB,* 563 F. 2d 724 (5th Cir. 1977). There, the National Labor Relations Board (NLRB) appealed an order of the district court directing it to disclose all written statements of prospective witnesses it intended to call in an unfair labor practice complaint hearing. The court of appeals, in affirming, held that the NLRB had failed to sustain the burden of proving that disclosure of the statements would interfere with the Board's enforcement proceedings so as to exempt such statements from disclosure under exemption 7(A) of the FOIA.

The Supreme Court granted certiorari in *Robbins, supra, NLRB v. Robbins Tire and Rubber Co.,* 437 U. S. 214, 98 S. Ct. 2311 (1978), to resolve the conflict among circuits on the question of whether the FOIA required the NLRB to make such a disclosure. After an extensive review and analysis of the legislative history of the FOIA and the 1974 amendments to exemption 7, the Supreme Court, in reversing the 5th Circuit, concluded that prehearing disclosure of prospective witnesses' statements would interfere with NLRB

enforcement proceedings. It further held that such statements are exempt from FOIA disclosure at least until completion of the Board's hearing.

In reaching its decision that premature disclosure of the witnesses' statements would interfere with NLRB enforcement proceedings, the Supreme Court recognized that the courts had uniformly protected such statements from mandatory disclosure prior to an unfair labor practice proceeding. It also recognized the peculiar character of labor litigation and the likelihood of intimidation and harassment of persons who had given statements.

In focusing on the present case, we cannot determine from the record before us whether the information sought by Equitable would interfere with the Commission's enforcement proceedings, or produce one of the other enumerated harms in section 3 (b) (i). Therefore, this case shall be remanded to the lower court for the limited purpose of determining whether section 3 (b) (i) requires the Commission to disclose the information sought by Equitable.

In making this determination the lower court should consider, among other things, the following:

1. That the records of the Commission are not protected from disclosure simply because they are part of investigatory files compiled for law enforcement or prosecution purposes.

2. That the Commission has the burden of proving that disclosure of the records sought would produce one of the harms specified in section 3 (b) (i).

3. That the *in camera* review provision of section 5 (b) (1) is discretionary and does not mandate that the documents be individually examined.

> *Judgement affirmed in part and reversed in part.*
> *Case remanded for further proceedings in conformance with this opinion.*
> *Costs to be paid by appellants.*