Dear Honorable M. Teresa Garland
You have asked for our opinion about the extent to which the Office of the Independent Juvenile Justice Monitor ("Independent Monitor") must keep confidential information that it receives in carrying out its statutory responsibilities to evaluate and report on investigations of alleged child abuse or neglect at facilities of the Department of Juvenile Services ("DJS"). You specifically ask us to reconcile the Independent Monitor's statutory obligations to provide reports to other State officials and to respond to requests under the Maryland Public Information Act ("PIA") with the confidentiality requirements that pertain to child abuse investigations under Annotated Code of Maryland, Article 88A, § 6(b). We summarize your questions as follows:
1. To what extent does Article 88A, § 6(b), limit the information regarding incidents and investigations of possible child abuse and neglect that the Independent Monitor may include in the reports that it is required to provide to various State officials?
2. To what extent does Article 88A, § 6(b), or other law further limit the information in a report of the Independent Monitor that may be disclosed in response to a request under the PIA?
3. Do the restrictions imposed by Article 88A, § 6(b), on the information in a report depend on which agency provided the information to the Independent Monitor?
For the reasons explained in this opinion, we conclude:
1. A report by the Independent Monitor may, and should, include findings and recommendations regarding public agency performance in response to allegations of child abuse and neglect at DJS facilities. However, to comply with Article 88A, § 6(b), the report should not identify, or disclose information that invades the privacy of, a child, the child's family, the individual who allegedly committed the abuse, or the individual who reported suspected abuse to State or local authorities.
2. Assuming that a report is prepared in compliance with Article 88A, § 6(b), that statute would not further restrict the public inspection of the report pursuant to a PIA request. Of course, in responding to a PIA request, the Independent Monitor must also consider other applicable exceptions to the general rule of disclosure under the PIA. In particular, the Independent Monitor should consult with agencies that provided investigative reports to determine whether public disclosure of the contents of those records would compromise a current investigation or otherwise be contrary to the public interest. To the extent possible, the Independent Monitor should identify the parts of a report subject to that exemption at the time the report is provided to State officials.
3. The restrictions imposed by Article 88A, § 6(b), apply to information that the Independent Monitor obtains from DJS, local departments of social services, law enforcement agencies, or other agencies, as well as to results of any investigation by the Independent Monitor itself.
 I The Independent Monitor
A. Duties of the Independent Monitor
The Independent Monitor, established in the Governor's Office for Children, Youth, and Families ("OCYF"), is responsible for determining "whether the needs of children under the jurisdiction of the Department [of Juvenile Services] are being met in compliance with State law, that their rights are being upheld, and that they are not being abused." Annotated Code of Maryland, Article 49D, § 40(f).[1] The Independent Monitor must evaluate facilities owned or operated by DJS, including physical conditions, staffing, grievance and monitoring processes, and the treatment and services provided to residents. Article 49D, § 43(1). It is to review DJS's internal monitoring and incident reporting activities, as well as the reports of findings of the local departments of social services[2] concerning incidents at the facility. Article 49D, § 43(2), (5), (6). The Independent Monitor is to make unannounced site visits to facilities, interview staff, youth, and others, and participate in multi — disciplinary teams organized as part of an investigation of an allegation of abuse or neglect at a DJS facility. Article 49D, § 43(4), 44(2), (4).
 B. Reporting Obligations of the Independent Monitor
The Independent Monitor law directs the Independent Monitor to report detailed findings and recommendations to the legislative leadership and various other State officials. Article 49D, § 45. The statute requires the Independent Monitor to issue two basic types of reports: (1) special reports keyed to particular problems or findings, and (2) periodic reports summarizing the activities of the Independent Monitor.
First, the Independent Monitor must provide ongoing "timely" reports concerning:
 (1) Any problem regarding the care, supervision, and treatment of children in DJS facilities;
 (2) Findings and recommendations related to its investigations of disciplinary actions, grievances, incident reports, and cases of alleged child abuse and neglect; and
 (3) Other findings and actions undertaken by the Independent Monitor.
Article 49D, § 45(a). These reports are to be made to the Subcabinet for Children, Youth, and Families, to the Special Secretary for OCYF, and also to the Speaker of the House of Delegates and the President of the Senate.[3] Id.
Second, the Independent Monitor must prepare, on a quarterly and an annual basis, reports that describe "all activities of the Office" and any actions taken by DJS as a result of findings and recommendations of the Independent Monitor. Article 49D, § 45(b) — (c). The quarterly reports are also to summarize any violations of DJS standards or regulations that remained unabated for more than 30 days during the quarter. Article 49D, § 45(b)(3)(iii). These reports are to be provided to the Special Secretary, the Secretary of DJS, and the General Assembly. Article 49D, § 45(b)-(c). Copies of the quarterly reports must also be sent to the State Advisory Board for Juvenile Services, while copies of the annual reports are to be sent to the Governor and to special advisory boards related to specific juvenile facilities. Id.
 C. Requests for Reports of the Independent Monitor
Since its inception, the Independent Monitor has reviewed a number of instances of alleged child abuse and neglect in DJS facilities and has produced reports that identify practices that may impair the State's ability to prevent abuse and neglect or to respond effectively when it occurs.[4] The Independent Monitor has relied on information from numerous sources, including DJS incident reports, records and reports of local departments of social services and law enforcement agencies, interviews with facility staff and residents, personal observations by the Independent Monitor's staff, and participation in multi-disciplinary teams investigating particular incidents.
The Independent Monitor's reports have included detailed findings concerning alleged abuse incidents and the responses of DJS, local departments of social services, and law enforcement personnel. The reports also make recommendations for corrective action to improve public agencies' response to child abuse and neglect allegations and incidents. It is our understanding that the Independent Monitor has attempted to exclude from its reports identifying information concerning youths who may be the subjects of abuse or neglect, reporters of suspected abuse, and alleged abusers.
The Independent Monitor's reports have been disseminated to various State officials in accordance with the Independent Monitor law. Like other agencies, the Independent Monitor receives requests for copies of its reports pursuant to the Maryland Public Information Act ("PIA"), Annotated Code of Maryland, State Government Article ("SG"), 10-611 et seq. Before releasing a report in response to such a request, the Independent Monitor must redact information if disclosure of that information is prohibited by the PIA or other laws, such as Article 88A, § 6(b).
 II Confidentiality Requirements of Article 88A, § 6(b)
Much of the information and many of the reports reviewed by the Independent Monitor derive from investigations by law enforcement agencies and local departments of social services of suspected child abuse and neglect. Article 88A, § 6(b) generally provides that "all records and reports concerning child abuse and neglect are confidential." The statute and a related regulation of the Department of Human Resources ("DHR") set out limited circumstances under which disclosure is permitted. Article 88A, § 6(b)(1)-(2); COMAR 07.02.07.19. Unauthorized disclosure is a criminal misdemeanor. Article 88A, § 6(e).
The exceptions to the broad prohibition against disclosure are limited to specifically described situations and classes of persons who investigate the child abuse allegations, care directly for a child, or administer or oversee social welfare programs. Disclosure may be made pursuant to a court order or, in more limited circumstances, an order of an administrative law judge. Article 88A, § 6(b)(1). Disclosures are also permitted, for specified purposes, to various other State and local officials who investigate allegations of child abuse or neglect, to entities such as the State Council on Child Abuse and Neglect, the State Citizens Review Board for Children, and child fatality review teams, and to officials responsible for child protective services or child care, foster care, and adoption licensing. Article 88A, § 6(b)(2)(i), (ii), (iii). Disclosure may also be made to licensed practitioners or officials providing services to the victims of abuse or neglect. Article 88A, § 6(b)(2)(i), (v). Other permissible recipients of this information include a person accused of child abuse or neglect, the parent or custodian of a child, and a school superintendent or director of a child care facility responsible for taking administrative or personnel action against an alleged abuser. Article 88A, § 6(b)(2)(iv), (vi), (vii), (viii).
One of these exceptions specifically allows for disclosures to the Independent Monitor. Article 88A, § 6(b)(2)(ix). However, the statute is silent on whether this exception encompasses redisclosures in the Independent Monitor's reports. The DHR regulation attempts to ensure that redisclosure of such information is governed by the same standards as the original disclsoure. It provides that a record or report "may only be disclosed to individuals who, by law or written agreement, are subject to the requirements of Article 88A, § 6(b). . . ." COMAR 07.02.07.19F.
Both the statute and the regulation emphasize that the identity of the individual who reports alleged abuse or neglect is to remain confidential. See, e.g., Article 88A, § 6(b)(iv) (disclosure permitted to alleged abuser if identity of reporter is protected), (vi) (disclosure to parent or custodian permitted if reporter's identity is protected); COMAR 07.02.07.19E, I.
Finally, the statute contains a proviso that it should not be construed to prohibit ". . . the publication, for administrative . . . purposes, of statistics or other data so classified as to prevent the identification of particular persons or cases." Article 88A, § 6(c)(1).
The confidentiality requirements of Article 88A, § 6(b), are designed to ensure that the State complies with federal regulations issued under the Child Abuse Prevention and Treatment Act,42 U.S.C. § 5101 et seq. The federal statute prescribes eligibility criteria for certain federal grants for child abuse and neglect treatment and prevention programs. To maintain a state's eligibility, among other things, the state's law must include confidentiality provisions for child abuse and neglect records that are designed to protect the rights of victims of alleged abuse or neglect and their parents or guardians.42 U.S.C. § 5106a(b)(2)(A)(v). A related regulation requires that projects and programs supported by federal grants "must hold all information related to personal facts or circumstances about individuals involved in those projects or programs confidential and shall not disclose any of the information in other than summary, statistical, or other form which does not identify specific individuals [except in specified circumstances]." 45 C.F.R. § 1340.20. Another regulation, on which Article 88A, § 6(b), is patterned, spells out specific circumstances in which disclosure is permitted. See45 C.F.R. § 1340.14(i).
 III Application of Article 88A, § 6(b), to Independent Monitor Reports
A. Restrictions on Content of Reports
You first ask about the extent to which Article 88A, § 6(b), limits the information that the Independent Monitor may include in the reports required by its enabling legislation. At first glance, the two statutes may appear to work at cross purposes. Article 88A, § 6(b), strictly limits the disclosure of information concerning investigations of child abuse and neglect, even to government officials. On the other hand, the Independent Monitor law requires reports that necessarily must discuss such investigations at DJS facilities.
We begin our analysis from the premise that the two statutes should be harmonized to the extent possible. State v. Ghajari, 346 Md. 101, 115,695 A.2d 143 (1997) ("when two statutes appear to apply to the same situation, this Court will attempt to give effect to both statutes to the extent that they are reconcilable"). In that light we look to the legislative purpose underlying these enactments. Kaczorowski v. Mayor of Baltimore, 309 Md. 505, 514-15, 525 A.2d 628 (1987).
The Independent Monitor was created in response to reports of alleged child abuse at DJS facilities and concerns that there was a need for enhanced oversight of the agency's handling of such incidents. See, e.g., Criminal probe focuses on boot camp guards; Glendening orders monitoring of all juvenile facilities, Baltimore Sun (December 14, 1999) at p. 1A. The Independent Monitor law directs the Independent Monitor to review child protective services findings regarding abuse or neglect investigations at DJS facilities, and to participate in local child abuse and neglect multi-disciplinary investigatory teams, Article 49D, § 43, 49D, § 44, and to report "[f]indings, actions, and recommendations, related to the investigations of . . . alleged cases of child abuse and neglect" to the Subcabinet and legislative leadership, Article 49D, § 45(a). These responsibilities signal a legislative intent to include specific findings regarding child abuse and neglect incidents and investigations in the Independent Monitor's ongoing reports to the Subcabinet and legislative leadership.
In our opinion, Article 88A, § 6(b), is not to the contrary. In a 1986 opinion, Attorney General Sachs reviewed Article 88A, § 6, and the related federal law and regulations. He concluded that, even within the strict confines of the "legally mandated preservation of personal privacy," the statute and regulations should be construed to permit review of agency performance. 71 Opinions of the Attorney General 368 (1986).
As Attorney General Sachs noted, the federal law on which Article 88A, § 6(b), is based is intended to protect the privacy of a child and the child's family and, thus, "can properly be read as permitting disclosure, in the public interest, of information that would not impair personal privacy." 71 Opinions of the Attorney General 368, 377 (1986).[5]
This is thoroughly consistent with the intent of the federal law "to promote the establishment and conduct of effective state programs to prevent and treat child abuse." Id. Thus, as the 1986 opinion concluded, public disclosure that does not run afoul of Article 88A, § 6(b), and that would contribute to a fuller airing of "the quality of performance by social services agencies in handling child abuse cases," would ultimately promote agency effectiveness and permit agencies and the public to identify improvements in organization, administration, staffing, or funding of child protective services. Id.
Notably, the federal regulations, on which Article 88A, § 6(b), is patterned clearly contemplate that non-identifying information will be disclosed as part of the oversight of agency performance. They provide that a state may, by statute, authorize disclosure to:
 [a]n appropriate State or local official responsible for . . . oversight of the enabling or appropriating legislation, carrying out his or her official functions; and
 [a] person, agency, or organization engaged in a bona fide . . . evaluation project, but without information identifying individuals named in a report or record, unless having that information open for review is essential to the . . . evaluation, the appropriate State official gives prior written approval, and the child, through his/her representative . . ., gives permission to release the information.
45 C.F.R. § 1340.14(i)(2)(x)-(xi). As is evident, such a disclosure is limited, as necessary, to preserve individual privacy.
Attorney General Sachs concluded similarly that Article 88A, § 6(b) is "not intended to shield from public scrutiny the functioning of child protective services [and] should be construed to permit disclosure of facts about local department performance — if, but only if, disclosure does not compromise the privacy interests that the restrictions require to be protected." 71 Opinions of the Attorney General at 374-75.
Under the same reasoning, an Independent Monitor's report may discuss specific incidents of alleged abuse or neglect at DJS facilities, the steps taken to investigate such incidents and prevent further incidents, and any findings or conclusions of the investigators. However, the report should not include information from which the youth, the youth's family, the reporter of the alleged abuse, or the alleged abuser may be identified.[6] We understand that the Independent Monitor already seeks to exclude from its reports any personally identifiable information.
Under these guidelines, significant details regarding agency performance may be disclosed. Nonetheless, we urge the Independent Monitor to take special care to avoid disclosing information from which individuals may be identified indirectly or information that would otherwise invade personal privacy. In some instances, for example, this will require eliminating references to the age and home county of a child, certain details of an alleged incident, or the position classification and specific job assignment of an employee. As a general guideline, we suggest that the Independent Monitor's reports include only the degree of detail necessary for a reader to assess the adequacy of the public agency's investigation and response to a report of suspected child abuse.
B. Restrictions on Responses to Requests under the Public Information Act
OCYF periodically receives requests for copies of reports of the Independent Monitor, including those that contain findings regarding possible child abuse or neglect incidents and their investigation. Similar requests have been made to the Department of Legislative Services, to which such reports are submitted under Article 49D, § 45(a). You have asked what limitations Article 88A, § 6(b), places on the agency's response to such requests. In particular, you ask whether the agency must redact from the report non-identifying information describing the process by which an incident of alleged child abuse was reported, investigated, and resolved, before it releases the report in response to such a request.
A request for a report of the Independent Monitor is governed by the Maryland Public Information Act ("PIA"). SG § 10-611 et seq. The PIA provides a general right of public access to "public records" unless one of the various exceptions in the statute limits access. SG § 10-613(a). A report of the Independent Monitor is clearly a "public record" as it is "made by a unit . . . of the State government . . . in connection with the transaction of public business." SG § 10-611(g)(1).
Among the exceptions to the general right of access under the PIA are situations in which "inspection would be contrary to . . . a State statute." SG § 10-615(2)(i). Accordingly, Article 88A, § 6(b), which restricts disclosure of information concerning reports and investigations of child abuse, can be the basis for denying access to public records. However, in our opinion, if an Independent Monitor's report follows the guidelines outlined in the previous section of this opinion, Article 88A, §(6) should not bar public disclosure of the report. As Attorney General Sachs observed in 1986, "the public has a vital interest in seeing to it that those responsible for child protective services are doing their jobs properly and are provided with adequate resources. The agencies involved have no privacy interest to be protected; on the contrary, the public interest requires that they be held accountable for their performance, like any other part of government." 71 Opinions of the Attorney General 368 (1986) (emphasis added). Under the same reasoning, Article 88A, §(6), permits public disclosure of non-personally identifiable findings regarding agency performance in response to child abuse and neglect allegations that the Independent Monitor reports to the Subcabinet and the Legislature.[7]
On occasion, another exception to the PIA may apply to a specific report or specific portions of a report. For example, the PIA contains an exception for "records of investigations conducted by . . . a police department, or a sheriff," as well as investigatory files compiled by other agencies "for any other law enforcement, judicial, correctional, or prosecutorial purpose." SG § 10-618(f)(1).[8]
Inspection of those records may be denied if the custodian believes that their disclosure would be contrary to the public interest. SG § 10-618(a).[9]
Investigatory files compiled by the police in response to a report of suspected child abuse or neglect plainly are within the purview of the investigatory records exception. Records compiled by DJS or a local department of social services may also be withheld under this exception if certain showings can be made. Equitable Trust Co. v. State Human Relations Comm'n, 42 Md. App. 53, 399 A.2d 908 (1979), rev'd on other grounds, 287 Md. 80, 411 A.2d 86 (1980); Fioretti v. State Board of Dental Examiners, 351 Md. 66, 716 A.2d 258 (1998). In particular, the agency must be able to demonstrate that it "legitimately was in the process of or initiating a specific relevant investigative proceeding" and that disclosure of the investigatory information would prejudice the investigation or cause some other identifiable harm that justifies withholding the record. Fioretti, 351 Md. at 82, 91.
A report of the Independent Monitor might include information drawn from the investigatory files of another agency for which that agency might reasonably deny a request for access under the investigatory files exception. For example, an Independent Monitor's report might describe an ongoing investigation and include information that might prejudice the investigation, reveal an investigative technique, or disclose a confidential source. In those circumstances, it would be appropriate for the Independent Monitor to withhold that portion of the report from public inspection, if the agency that provided the information would itself deny access under the investigatory files exception.
In responding to a PIA request for a report, the Independent Monitor should consult with those agencies that shared investigative reports incorporated into the report to determine whether any information is subject to the investigative files exception and, if so, whether its disclosure would cause one of the harms the exception is designed to prevent — e.g., jeopardize an ongoing investigation. In some instances, the Independent Monitor may need to delay public disclosure of information until after administrative or judicial proceedings have been completed.
As a practical matter, it may be difficult for the State officials who receive a report of the Independent Monitor's to know whether the report contains such material exempt from public inspection under the PIA. If the Independent Monitor is aware at the time a report is disseminated that certain portions are exempt under the investigatory records exemption, it should identify those parts of the report for the benefit of the officials to whom the report is disseminated. The Independent Monitor should strive to the extent possible to avoid including material in a report that must be redacted before the report is publicly disseminated.
 C. Whether Restrictions Depend on the Source of the Information
Finally, you ask whether the disclosure restrictions imposed by Article 88A, § 6(b), depend upon which agency is the source of particular information. As noted above, in assessing a DJS response to allegations of child abuse and neglect, the Independent Monitor relies on information and reports from a variety of agencies and other sources, in addition to its own staff.
The applicability of Article 88A, § 6(b), to the investigative findings of agencies other than a department of social services has been discussed in several prior opinions of the Attorney General.
Those opinions indicate that the statute must be construed to protect the privacy of the persons involved in an abuse or neglect incident, regardless of whether information about the incident was reported by personnel of the local department of social services or other agency investigators. 76 Opinions of the Attorney General 220, 231 — 32 (1991) (information gathered by school systems, in response to allegations of child abuse by school personnel, is subject to confidentiality requirements of Article 88A, § 6(b)); 82 Opinions of the Attorney General 72 (1997) (Article 88A, § 6(b), proscriptions are applicable to law enforcement records). The Independent Monitor has the same obligation to maintain the confidentiality of protected information under Article 88A, § 6(b), as does DJS, a local department of social services, or a law enforcement agency that provided information to the Independent Monitor.
The confidentiality requirements associated with child abuse investigations are based on the nature of the information, not the agency that conducted the investigation. The same guidelines set out above apply to all information arising from a child abuse or neglect investigation, regardless of the original source of the information.
 IV Conclusion
In summary, it is our opinion that:
1. A report by the Independent Monitor may, and should, include findings and recommendations regarding public agency performance in response to allegations of child abuse and neglect at DJS facilities. However, to comply with Article 88A, § 6(b), the report should not identify, or disclose information that invades the privacy of, a child, the child's family, the individual who allegedly committed the abuse, or the individual who reported suspected abuse to State or local authorities.
2. Assuming that a report is prepared in compliance with Article 88A, § 6(b), that statute would not further restrict the public inspection of the report pursuant to a PIA request. Of course, in responding to a PIA request, the Independent Monitor must also consider other applicable exceptions to the general rule of disclosure under the PIA. In particular, the Independent Monitor should consult with agencies that provided underlying investigative reports to determine whether public disclosure of the contents of those records would compromise a current investigation or otherwise be contrary to the public interest. To the extent possible, the Independent Monitor should identify the parts of a report subject to that exemption at the time the report is provided to State officials.
3. The restrictions imposed by Article 88A, § 6(b), apply to information that the Independent Monitor obtains from DJS, local departments of social services, law enforcement agencies, or other agencies, as well as to results of any investigation by the Independent Monitor itself.
 J. Joseph Curran, Jr. Attorney General
 JoAnn Goedert Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] The Independent Monitor was originally created in 2000 under a Memorandum of Agreement of the Subcabinet for Children, Youth, and Families, an entity comprised of the heads of various human services agencies. See Annotated Code of Maryland, Article 49D, § 4.1. Two years later, the General Assembly codified the Independent Monitor and expanded its responsibilities. Chapter 255, Laws of Maryland 2002.
[2] Under State law, reports of child abuse or neglect are referred to a local department of social services or an appropriate law enforcement agency. See Annotated Code of Maryland, Family Law Article ("FL"), §§ 5-704, 5-705. Local departments of social services are charged with investigating those reports and pursuing various remedies, and providing treatment. See, e.g., FL §§ 5-706
(investigations), § 5-709 (removal of child from home), § 5-710 (provision of services to child); see also COMAR07.02.07.01A.
[3] The reports are to be submitted to the legislative leadership in accordance with Annotated Code of Maryland, State Government Article ("SG"), § 2-1246. Under that provision, five copies are delivered to the Department of Legislative Services. SG § 2-1246(b)(1). Copies are to be provided to other members of the Legislature upon request or upon direction of the leadership. SG § 2-1246(b)(2).
[4] See, e.g., Independent Juvenile Justice Monitor Special Report on Conditions/Incidents: Physical Abuse/Neglect Incidents, Thomas J.S. Waxter Children's Center (June 30, 2003) (findings and recommendations concerning excessive use of force incidents and other child abuse allegations at the Waxter Center during 2003); Charles Hickey School (May 29, 2003) (findings and recommendations regarding DJS reporting of and response to 20 cases of suspected child abuse or neglect during 2003 at the Charles Hickey School); Overcrowding/Inadequate Staffing and Supervision/Sexual Behavior between Youth/Decreased Incident Reporting/Threats to Life, Health and Safety, Cheltenham Youth Facility (November-December 2003) (findings and recommendations regarding health and safety risks to youth as a result of severe understaffing and failure to report violent incidents to DJS and other authorities).
[5] The 1986 opinion also specifically addressed the extent of disclosure when a child has died and a parent or other custodian of the child has been arrested on charges related to alleged abuse. The Legislature subsequently codified and elaborated on the guidelines provided by the opinion, by enacting Article 88A, § 6A. Chapters 405, 406, Laws of Maryland 1998. That statute explicitly grants the Secretary of Human Resources and local social services directors the discretion to disclose information regarding a child abuse investigation if the child has died or suffered serious injury, criminal charges have been filed, and disclosure is not contrary to the best interests of the child. Article 88A, § 6A. In those circumstances, the identity of the suspected victim of abuse may be disclosed, but not the identity of the person who reported the alleged abuse or neglect. Article 88A, § 6A(d)-(e).
[6] This proviso would not pertain if specific information had already properly become a matter of public record — for example, if the alleged perpetrator had been named as a defendant in a criminal proceeding arising out of the incident. See 71 Opinions of the Attorney General 368, 375 (1986).
[7] For similar reasons, the 1986 opinion concluded that another exception in the PIA did not bar access to non-identifiable information. That exception prohibits public disclosure of "public records that relate to welfare for an individual." SG § 10-616(c). Noting that the PIA must be construed broadly to afford public access to information about actions of government agencies and officials, the 1986 opinion determined that information on agency performance that does not implicate individual privacy interests could be disclosed. 71 Opinions of the Attorney General at 378. Thus, this exception would also not affect disclosure of a report by the Independent Monitor that complies with the guidelines set out in the previous section of this opinion.
[8] This provision also permits Maryland law enforcement agencies to deny inspection of certain intelligence and security information, SG § 10 — 618(f)(1)(iii), and provides a "person in interest"with a somewhat greater right of access, SG § 10-618(f)(2).
[9] To some extent, the assessment whether a disclosure of investigatory records is contrary to the public interest involves considerations similar to the privacy concerns underlying Article 88A, § 6(b). See, e.g., SG § 10-618(f)(2)(iii) (investigatory record may be withheld if disclosure would constitute an unwarranted invasion of personal privacy); (iv) (disclosure of confidential source); Mayor and City Council of Baltimore v. Maryland Comm. Against the Gun Ban, 329 Md. 78, 612 A.2d 1040 (1993) (disclosure of report of internal investigation of police officer might dissuade witnesses and possible informants from cooperating in the investigation). However, other factors can also be part of a determination whether an agency should disclose an investigatory record. See, e.g., SG § 10-618(f)(2)(i) (interference with law enforcement proceedings); (vi) (prejudice to an investigation). *Page 48